765 So.2d 460 (2000)
STATE of Louisiana, Appellee,
v.
Darryl Ramon LOWERY, Appellant.
No. 33,584-KA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*461 Louisiana Appellate Project by Wilson Rambo, Counsel for Appellant.
Richard Ieyoub, Attorney General, Counsel for Appellee.
Before CARAWAY, KOSTELKA, CRIGLER (Pro Tempore), JJ.
KOSTELKA, J.
After Darryl Ramon Lowery ("Lowery") pled guilty to manslaughter, La. R.S. 14:31, and second degree kidnapping, La. R.S. 14:44.1, the trial court sentenced him to concurrent sentences of forty years at hard labor without benefit of parole, probation or suspension of sentence on the manslaughter conviction and to thirty years at hard labor on the kidnapping charge. After the denial of a timely motion to reconsider his sentences, Lowery appeals his sentences as excessive. We delete that portion of the manslaughter sentence which was imposed without benefit of parole, and, in all other respects, affirm the convictions and sentences.

FACTS
On March 22, 1998, Deputy Steve Rogers ("Rogers") of the Lincoln Parish Sheriff's Department responded to the report of a body buried in a shallow grave in the southern part of Lincoln Parish, Louisiana. Upon arriving at the scene, Rogers discovered the body of an individual who was later identified as Charles "Lucky" Lewis ("Lewis"). Lowery was arrested in September of 1998, after the investigation implicated him and three other defendants. When questioned regarding the death, Lowery admitted to beating and kidnapping Lewis on February 18, 1998, and then burying the body the next day.[1] He led authorities to physical evidence of the homicide and to the abandoned house where the crime took place. In his statements, Lowery explained that he and his brother, Michael Lowery ("Michael"), and Derrick Mitchell ("Mitchell") had gone to Mitchell's father's abandoned house to complete a drug transaction. Corey Brown ("Brown") and Lewis were at the house near where Mitchell had earlier hidden drugs. When Mitchell discovered the *462 drugs missing, he blamed Lewis. Mitchell fired gunshots in an attempt to get Lewis to confess to taking the drugs. When Lewis did not confess, Lowery held him while Mitchell beat him with a piece of wood. Although evidently still conscious, Lewis was placed into the trunk of Mitchell's car and kept there as Lowery, Mitchell, Michael and Brown drove to another residence to see Mitchell's father and his girlfriend. Thereafter, the four men took Lewis back to the abandoned house and Lowery and Mitchell removed him from the trunk of the car. Lowery tied his hands with a piece of cloth and carried him into a bedroom inside the house because he could not walk; both of his legs were broken due to the earlier beating. At that time Lewis was still responsive to questions. Lowery, Mitchell and Michael left the scene, but Brown remained with Lewis to "watch over" him. The next morning, Lowery, Mitchell and Michael went back to the house. Lewis was dead and Brown was gone. The three then located Brown, went back to the abandoned house and placed Lewis's body in the trunk of the car. The men drove into a wooded area, took the body out of the trunk and attempted to burn it after dousing it with gasoline. Lowery struck the match to start the fire. When the body did not burn completely, the men dug a shallow grave and put the body into it. They then returned to the homicide scene and removed the bloody carpet. Mitchell discarded the piece of wood used to beat Lewis.
The state charged Lowery, Brown, Mitchell and Michael with second degree murder and aggravated kidnapping.[2] As part of a plea agreement, the state agreed to reduce Lowery's charges to manslaughter and second degree kidnapping and not to charge him as an habitual offender in exchange for Lowery's promise to testify truthfully against the other defendants. After sentencing, this appeal ensued.

DISCUSSION
On appeal, Lowery argues that both sentences are excessive, that the trial court failed to adequately articulate reasons for sentencing and consider matters in mitigation. Lowery finally argues that the portion of the manslaughter sentence which disallows the benefits of parole, probation or suspension of sentence is illegal.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.06/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864.
Prior to sentencing, the court reviewed a presentence investigation report which contained a thorough record of Lowery's personal and social history, educational, and employment records. This report also contained the record of Lowery's prior criminal activity which included *463 three prior drug-related felony convictions in 1990, 1991 and 1992. Lowery had two misdemeanor convictions involving violence and was on parole at the time of the present offenses. He had also committed other past offenses while on probation. The court found that Lowery had established a pattern of criminal behavior which created an undue risk that he would commit another crime if granted probation. The court determined that Lowery was in need of correctional treatment and that a lesser sentence would deprecate the seriousness of the offenses.
In aggravation, the court found that Lowery's conduct manifested deliberate cruelty to the victim and involved drugs. Although Lowery stated that he was scared of Mitchell, he nevertheless participated in the beating by holding the victim. The court later described the murder as a "senseless despicable act."
In mitigation, the court considered that Lowery had expressed true remorse and had cooperated with law enforcement authorities. It appeared that defendant was a follower more than a leader, but he continually made choices which kept him in his overall situation.
We find adequate 894.1 compliance. The court is not bound to give specific matters any particular weight. State v. Berry, 29,945 (La.App.2d Cir.10/29/97), 702 So.2d 33. Moreover, in this case, the record clearly shows that the court considered both aggravating and mitigating circumstances, Lowery's personal history, his extensive criminal record, which included fourteen arrests over a period of eleven years, the seriousness of the offense and likelihood of rehabilitation. Accordingly, this record exhibits more than an adequate factual basis for the sentence imposed.
The second prong of the excessive sentence analysis is whether the sentence imposed is too severe. This determination depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
A trial court has wide discretion to sentence within the statutory limits. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Black, 28,100 (La. App.2d Cir.02/28/96), 669 So.2d 667, writ denied, 96-0836 (La.09/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion, we will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.04/02/97), 691 So.2d 345.
In this case, Lowery received the maximum sentence on his manslaughter conviction. On the second degree kidnapping conviction, he received ten years less than the possible maximum forty-year sentence. These sentences were allowed to run concurrently. For the following reasons, we find neither of these sentences to be constitutionally excessive.
Both of Lowery's original charges were punishable by mandatory sentences of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Accordingly, this defendant received a significant reduction in potential sentencing exposure. Moreover, the pled offenses do not adequately describe Lowery's participation in this senseless killing.
Lowery has a history of violence and disregard for the safety of human life. *464 These propensities are demonstrated by his convictions for simple battery, simple assault on an officer and resisting arrest. Lowery has three prior felony drug convictions, all involving possession of cocaine, possession of cocaine with intent to distribute and distribution of cocaine. His active participation in the present offenses manifested deliberate cruelty toward the victim and was grounded in illicit drug activity. The defendant was obviously undeterred by prior probationary treatment because at the time of this offense and other past offenses, he violated both parole and probation. Lowery has exhibited a continued propensity toward violence which has culminated in the taking of a life. Under these circumstances, we cannot find that the sentence imposed for either offense shocks the sense of justice or is a needless or purposeless imposition of pain and suffering.

Imposition of Manslaughter Sentence Without Benefits
Lowery also argues that the trial court erred in directing that his manslaughter sentence be served without benefit of parole, probation or suspension of sentence. We agree in part.
At sentencing, the trial court judge stated that "[T]his is designated a crime of violence in Code of Criminal Procedure Article 890.1 so the sentence is imposed pursuant to that." La.C.Cr.P. art. 890.1(B) allows the sentencing court to deny or place conditions on eligibility for diminution of sentence for good behavior. The pertinent provisions of La. R.S. 14:31(B) provide that whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. Additionally, La.C.Cr.P. art. 893 provides that the court shall not suspend the sentence of a conviction for a crime of violence. Manslaughter is a crime of violence as defined in R.S. 14:2(13)(d). Accordingly, the trial court correctly disallowed both the suspension of Lowery's sentence and probation.
However, when read together, these provisions give the court no authority to deny parole.[3] Accordingly, that part of the manslaughter sentence is illegal. It is, therefore, necessary that we delete that portion of the sentence which denies Lowery the benefit of parole. In all other respects, the sentences and convictions are affirmed.[4]
CONVICTIONS AFFIRMED; SECOND DEGREE KIDNAPPING SENTENCE AFFIRMED; MANSLAUGHTER SENTENCE AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Lowery gave two statements to police, on September 24, 1998 and October 14, 1998.
[2] For a complete synopsis of the facts and codefendants' statements, see State v. Derrick Mitchell, 33,277 (La.App.2d Cir.03/01/2000), 753 So.2d 985.
[3] We note that La. R.S. 15:574.4(A)(1), which forms part of the Board of Parole guidelines, provides that a person convicted of a third or subsequent felony offense shall not be eligible for parole. But see La. R.S. 15:574.4(A)(3).
[4] We also note that the trial court erred in failing to designate that at least two years of the second degree kidnapping sentence be served without benefit of parole, probation or suspension of sentence in accordance with La. R.S. 14:44.1. Because the state has failed to appeal this sentencing error, this court may not correct this illegally lenient sentence nor may we remand for resentencing. State v. Fraser, 484 So.2d 122 (La.1986).