781 So.2d 713 (2001)
STATE of Louisiana, Appellee,
v.
Michael O'Shay LOWERY, Appellant.
Nos. 33,905-KA, 33,906-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2001.
*717 Amy C. Ellender, Baton Rouge, Counsel for Appellant.
Michael O'Shay Lowery, Pro Se.
Richard P. Ieyoub, Attorney General, Robert W. Levy, District Attorney, Clifford R. Strider, III, Assistant District Attorney, Counsel for Appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The defendant, Michael O'Shay Lowery was convicted as charged of second degree murder, aggravated kidnapping and obstruction of justice, violations of LSA-R.S. 14:30.1, LSA-R.S. 14:44 and 14:130.1, respectively. The trial court sentenced the defendant to serve two consecutive sentences of life imprisonment for the second degree murder and aggravated kidnapping convictions, and twenty years at hard labor for the obstruction of justice conviction. *718 The trial court ordered that the twenty-year sentence be served concurrently with the two life imprisonment sentences. The defendant's timely motion to reconsider sentence was denied. The defendant appeals. For the following reasons, we affirm the defendant's convictions and sentences for second degree murder and obstruction of justice. The defendant's aggravated kidnapping conviction is reversed and the sentence is vacated.

FACTS
Defendant was indicted by a grand jury for the second degree murder and aggravated kidnapping of Charlie Lewis, who was severely beaten and eventually died of his wounds on February 19, 1998. The investigation revealed that there were four participants in this heinous crime, the defendant, Michael O'Shay Lowery, his brother, Darryl Lowery, Derrick Mitchell and Corey Brown.[1] In a separate trial, Derrick Mitchell was tried and convicted of second degree murder and aggravated kidnapping.[2] Darryl Lowery pled guilty to manslaughter.[3] Corey Brown ("Corey"), a seventeen year old at the time of the offense, was charged with second degree murder and aggravated kidnapping. Corey and the defendant were also charged with obstruction of justice. Corey pled guilty to obstruction of justice and agreed to testify for the state. All other charges against him were dismissed. The defendant refused to plead guilty and insisted on proceeding to trial. At trial, defendant testified in his defense. Corey testified for the state. Their respective stories of the events which occurred vary significantly.
On February 18, 1998, the defendant, a Shreveport resident, was in Ruston to visit his hospitalized grandmother. He intended to spend the night at his mother's house on Farmerville Street. While using a pay phone at a convenience store across the street from his mother's house, defendant saw and spoke with Derrick Mitchell ("Derrick"). The defendant was invited by Derrick to go "riding in the country with him." The defendant's brother, Darryl Lowery, was also there and went along on the ride. Once they were in Derrick's car, the three men drove to Derrick's father's "old homeplace" ("the old house") in rural Lincoln Parish. When they arrived at the old house, defendant testified that he was greeted by Charlie Lewis ("Charlie"), who he learned was living at the house. The defendant was also introduced to Corey, who was also living at the house. Corey testified that they had come to the house to pick up drugs, specifically cocaine. At trial, the defendant testified that he did not have a specific purpose in going with Derrick and he was just "killing time."
Shortly after they arrived, Derrick went behind the old house to look for the drugs he had hidden. Corey testified that Derrick was looking for the drugs because the defendant was going to sell them to "one of his partners." When Derrick returned to the house he informed the men that he could not find the drugs and accused Charlie of having taken them. Derrick had a gun and began to threaten to shoot Charlie unless he told him where the drugs were. Derrick fired the gun twice in an effort to frighten Charlie, then Derrick forced Charlie outside to look for the drugs. According to the defendant, they all went outside on this occasion to search for the *719 drugs. However, because of the darkness, the drugs could not be located and Derrick became enraged, continuing to accuse Charlie of stealing the drugs. Derrick began to beat Charlie with a board. The defendant told Derrick to stop beating Charlie, that "it wasn't worth killing him." Corey testified that the defendant continued to tell Charlie that he should tell Derrick where the drugs were. Thereafter, Charlie, who could not walk as the result of his injuries, was carried outside to the car and placed in the trunk of Derrick's car. The defendant testified that Derrick intended to take Charlie to his dad's house, while Corey testified that the defendant stated that he knew someone in Shreveport who would kill Charlie for them. They left the old house and headed west toward Shreveport. While in route, the defendant again stated that he knew someone in Shreveport who would kill Charlie. Defendant testified that they headed west because Derrick was attempting to scare Charlie by telling Charlie that the drugs belonged to "some people" in Shreveport, and that they would take Charlie to them.
According to Corey, approximately seven miles down the road, Derrick stopped the car. Derrick and the defendant had a discussion outside the car. After this discussion, they headed east and went to the home of Derrick's father, Willie Roy Mitchell. During this entire time, Charlie was captive in the trunk of the car. When they arrived at Mr. Mitchell's home, Derrick got out of the car and spoke to his father. Both Mr. Mitchell and his cohabitant girlfriend, Janice Spencer, came outside to the car. Corey testified that both Mr. Mitchell and Ms. Spencer questioned Charlie about taking the drugs and tried to convince Derrick not to harm Charlie. Derrick got into the car and drove back to the old house.
When they arrived back at the old house, Derrick and Darryl removed Charlie from the trunk and propped him against the car's rear bumper. At this time, approximately 2:30 or 3:00 a.m., Charlie was still alive. According to the defendant, Mr. Mitchell, his daughter Pat Mitchell, and Ms. Spencer arrived and continued to question Charlie regarding the drugs. Derrick, Darryl and Corey then tied Charlie's hands, feet and mouth and took him into the back room of the old house. Corey stayed at the old house. Derrick, Darryl and the defendant left, stopped at Mr. Mitchell's to switch cars, and then Derrick drove the defendant and Darryl to their mother's house in Ruston.
The following morning, Derrick and the defendant returned to the old house, driven there by Mario Spivey ("Mario"). The defendant testified that the only reason he went with Derrick that morning was to protect Charlie from further harm. However, before entering the house, all three men searched for and located the missing drugs. When they went to the back room of the house to check on Charlie they discovered that he was dead. Defendant testified that Mario suggested that they dispose of the body by burning it. Corey testified that they had decided to dump the body in a well, and that Derrick, the defendant and Mario left and returned again, this time with Darryl, but not Mario. At this time, they were driving Derrick's girlfriend's car and had to remove toys and clothing from the trunk to make room for the body. The defendant helped Corey remove these items from the trunk.
Derrick, Darryl, Corey and the defendant drove to a rural spot off of a logging road to dispose of the body. Defendant claims that he told Derrick he did not want to be involved with the disposal of the body and got out of the car. Corey testified that the car got stuck in mud on their *720 way into the wooded area. The defendant helped push the car out of the mud and stayed behind on the road as a lookout. Corey further testified that when Derrick and the defendant went to pick up Darryl, they had purchased a gasoline can and filled it with gasoline so they could burn the body, if necessary. When they discovered that the well was full, Derrick and Darryl proceeded to burn the body which was wrapped in carpet from the old house. The body did not burn completely, so they dug a grave. They then covered the body with dirt and leaves to conceal it.
While the men were driving out of the woods on the logging road, their car got stuck in the mud again. Derrick walked toward the main road where the defendant was waiting and the two men went to the nearby house of Michael Perkins. Derrick, who knew Perkins, asked if they could use his telephone to call for help because his car was stuck. Perkins noted that both Derrick and the defendant were covered with mud and that they were evasive about where they had gotten stuck. Although Perkins could not identify the defendant as the individual with Derrick that day, defendant admitted during cross-examination that he had gone to Perkins' house. When Derrick could not reach his uncle on the telephone, he and the defendant hitched a ride with a passing vehicle and eventually returned with Derrick's uncle's truck. Before they left the logging road, the defendant used a pine tree limb to sweep the car tracks in an effort to "cover up" the fact that the car had been driven down that road.
Derrick, Darryl, Corey and the defendant returned to the old house to remove any evidence of the crime. Corey testified that the defendant scooped up blood drops from the ground into a container. The four men then traveled to Arcadia. On the way to Arcadia, they threw the items they had collected into a trash pile on the side of a road in Bienville Parish. Corey and Darryl cleaned the mud from the car at a car wash, while Derrick called a female friend to rent a motel room. Corey purchased new clothing for himself, Derrick and Darryl. They bathed and changed clothes in the motel room. The four men stayed at the motel room for some time before returning to Lincoln Parish. Derrick dropped Corey off at the old house and the defendant and Darryl were taken to their mother's house.
During cross-examination, the defendant admitted that:
1) His vehicle was available to him at his mother's house when these events occurred.
2) His mother had a telephone at her home.
3) He took no affirmative action in an attempt to stop the beating of Charlie Lewis or the destruction and concealment of his body.
4) He did nothing to notify the police of the beating and kidnapping of Charlie, nor did he report his death.
5) He has been convicted twice for possession of cocaine.
6) He knew that Derrick was returning the following day to look for the drugs. He helped Derrick search for the drugs in the woods behind the old house before going inside to check on Charlie Lewis, and
7) The crimes of second degree murder, aggravated kidnapping and obstruction of justice occurred in regard to the death of Charlie Lewis.
Willie Roy Mitchell and Janice Spencer were witnesses for the state. Both confirmed that Derrick, Darryl, Corey and the defendant drove to their home that night with Charlie held captive in the trunk of Derrick's car. Further, both testified that *721 the defendant made statements to the effect that they were taking Charlie to Shreveport to have him killed. The state also called Dr. Steven T. Hayne as a witness. Dr. Hayne testified that Charlie Lewis died of cerebral trauma to the brain caused by being struck with a blunt object. Dr. Hayne also testified that Mr. Lewis had several lacerations about his head and body, fractures of both the left and right tibias and fibulas (four fractures) and fractured ribs. In addition, Lewis's body was notably charred from the attempted incineration. Lincoln Parish Sheriff's Deputy Steve Rogers also testified at length about his extensive investigation of this crime.
Other than his own testimony, the defendant did not present any witnesses or exhibits. On September 23, 1999, a unanimous jury convicted defendant as charged. Thereafter, defendant was sentenced by the trial court to serve two consecutive life sentences and to serve a concurrent term of twenty years at hard labor. The two life sentences were ordered to be served without the benefit of probation, parole or suspension of sentence. Defendant's motion to reconsider sentence was denied. Defendant filed a motion for post-verdict judgment of acquittal and in the alternative a motion for new trial. Following oral argument by counsel, the trial court denied the motion.
From his convictions and sentences, the defendant's counsel has lodged this appeal urging three assignments of error. The defendant also has filed a pro se supplemental brief, urging seven additional assignments of error, including a claim of ineffective assistance of counsel.

DISCUSSION

Assignment of Error No. 1:

Sufficiency of the evidence
By this assignment, defendant contends the evidence was insufficient to prove that he was a principal to the second degree murder and aggravated kidnapping of Charlie Lewis. Further, defendant contends the evidence did not support a conviction of obstruction of justice. Defendant does not deny that the evidence adduced at trial clearly showed that these crimes had been committed, rather, he argues that the evidence was insufficient to prove that he participated in the commission of these crimes.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
*722 This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Bellamy, supra.
LSA-R.S. 14:30.1 defines second degree murder, in pertinent part, as follows:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2)(a) When the offender is engaged in the perpetration or attempted perpetration of .... aggravated kidnapping... even though he has no intent to kill or to inflict great bodily harm.
LSA-R.S. 14:44 defines aggravated kidnapping, in pertinent part, as follows:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
. . . .
(3) The imprisoning or forcible secreting of any person.
Pursuant to LSA-R.S. 14:23, the parties to a crime are classified as either "principals" or "accessories after the fact." A principal is defined by LSA-R.S. 14:24 as:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid or abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
The trial court used this statute in its instructions to the jury. The defendant requested and the trial court gave the following instruction:
Only those persons who knowingly participate in the planning or execution of a crime are principals. Mere presence at the scene is not enough to concern an individual in the commission of the offense.
In addition, the trial court defined "aiding and abetting" for the jury as follows:
[T]o, help, assist, or facilitate the commission of a crime, promote the accomplishment thereof, help in the advancing or bringing it about, or encourage, counsel, or incite as to its commission. It comprehends all assistance rendered by words, acts, encouragement, support, or presence, actual or constructive, to render assistance as necessary.
Defendant's argument that the state failed to present sufficient evidence from which the jury could reasonably conclude that he was a principal in the commission of these crimes lacks merit. The state's case, consisting of the testimony of Corey Brown, an eyewitness, corroborated by *723 other fact witnesses who had personal knowledge of the defendant's involvement in these crimes and defendant's statement to law enforcement officers, presented direct evidence to the jury in support of a finding of defendant's guilt.
Clearly, the jury rejected defendant's testimony of the events that occurred over the course of almost two days. Corey Brown's testimony that defendant encouraged the victim to disclose the location of the drugs; defendant acquiesced in placing the victim in the trunk and continually confining him to the trunk; defendant counseled with Derrick while in route to Shreveport as to what should be done with the victim; and, defendant took no steps to release the victim although he had ample opportunity to do so, provided a factual basis for a reasonable jury to conclude that the defendant was a principal to the crime of aggravated kidnapping. The defendant's admission of his prior history with drugs adds credibility to Corey Brown's testimony that defendant "hooked up" with Derrick that night for the purpose of buying drugs. The credibility and weight to be given Brown's testimony as a participant in the commission of this crime was solely within the province of the jury. Clearly, the victim's eventual death, while still bound and confined by his captors, could lead a reasonable juror to conclude that a second degree felony murder occurred.
After viewing the totality of the evidence presented in a light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that the evidence presented by the state was sufficient to find the defendant guilty of second degree murder, while in the commission of an aggravated kidnapping. The defendant's arguments to the contrary are without merit.
LSA-R.S. 14:130.1 defines obstruction of justice, in pertinent part, as follows:
A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal or addition of any object or substance either:
(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers.
The defendant's argument that the state's evidence was insufficient to prove beyond a reasonable doubt that he committed the offense of obstruction of justice is without merit. The testimony of Corey Brown, if believed by the jury, was sufficient to convict defendant of obstruction of justice. Specifically, Corey testified that the defendant helped him move items out of the trunk of the car so that the victim's body could be placed in the trunk. Corey also testified that the defendant helped remove evidence (bloody carpet, the board used to beat Charlie, blood drops in the dirt) from the old house and dispose of it in Bienville Parish. According to Corey, after they disposed of the body the defendant attempted to conceal the tire tracks on the logging road. In addition, Corey testified that the defendant stood on the logging road and served as a "look out," while Corey, Derrick, and Darryl were in *724 the woods disposing of the victim's body. Moreover, the record is devoid of any evidence that the defendant made any effort to stop the attempted destruction and concealment of the victim's body.
In light of the testimony adduced at trial, a rational trier of fact could have concluded beyond a reasonable doubt that the evidence was sufficient to convict the defendant of obstruction of justice. Thus, the jury's verdict is supported by the record.
We do not find any error in the trial court's denial of the defendant's motion for post-verdict judgment of acquittal. The motion shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilt. LSA-C.Cr.P. art. 821. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.), writ denied, 604 So.2d 973 (La.1992). For the reasons set forth above, the trial court did not err in denying the defendant's motion for post-verdict judgment of acquittal.
Additionally, we note no error of law nor injustice which would warrant a review of the trial court's denial of defendant's motion for new trial. In his motion, defendant alleged that the trial court erred when it failed to "recharge the jury" regarding the elements of the crimes charged. Defendant argued that during deliberations, the jury requested the state's "charts" which contained the elements of the crimes. The trial court correctly denied the jury's request. At the hearing on the motion for new trial, the trial court summarily dismissed defendant's claim noting that neither the jury nor defense counsel requested that the jury receive additional instructions. LSA-C.Cr.P. arts. 801 and 808. Moreover, defense counsel failed to assert a contemporaneous objection to the trial court's failure to further instruct the jury. State v. Walker, 577 So.2d 770 (La.App. 2d Cir.), writ denied, 581 So.2d 704 (La.1991). Therefore, the trial court did not err in denying defendant's motion for new trial. State v. Anderson, 29,282 (La.App.2d Cir.6/18/97), 697 So.2d 651; LSA-C.Cr.P. arts. 851 and 858.
This assignment of error lacks merit.

Assignment of Error No. 2:

Double jeopardy
Defendant next contends that it is contrary to the constitutional guarantee against double jeopardy for him to be convicted and sentenced for both second degree felony murder and aggravated kidnapping. Specifically, defendant argues that since proof of the commission of an aggravated kidnapping is an essential element necessary to sustain a conviction for felony murder, then his two life sentences punish him twice for the same criminal conduct.
In its brief, the state correctly notes that second degree murder may be shown by proof of a killing of a human being when the offender has the specific intent to kill or of a killing of a human being which occurs during the perpetration of one of the enumerated felonies. However, in the instant case, the trial court failed to instruct the jury that second degree murder may be shown by proof of a specific intent to kill. LSA-R.S. 14:30.1A(1). Because the jury was not given this instruction, and was only instructed regarding second degree felony murder, the state concedes that defendant's argument has merit and suggests that the conviction and sentence for aggravated kidnapping be vacated.
In State v. Lee, 554 So.2d 180 (La.App. 2d Cir.1989), this court stated:

*725 When proof of the commission of a felony (armed robbery in this instance) is an essential element of a first-degree murder or an attempted first degree murder, the defendant cannot be convicted and punished for both the murder or attempted murder and the underlying felony. State ex rel. Wikberg v. Henderson, supra [292 So.2d 505 (La. 1974) ]; State v. Rogers, 462 So.2d 684 (La.App. 4th Cir.1984), writ denied, 478 So.2d 899; State v. Bradford, 514 So.2d 534 (La.App. 3d Cir.1987), writ denied, 523 So.2d 226, cert. denied, 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988).
. . . .
Where multiple sentences subject a defendant to double jeopardy, the conviction and sentence for the less severely punishable offense are to be vacated. State v. Doughty, supra [379 So.2d 1088 (La.1980) ].
See also, State v. Coates, 27,287 (La. App.2d Cir.9/27/95), 661 So.2d 571; State v. Williams, 26,230 (La.App.2d Cir.9/21/94), 643 So.2d 284; State v. Powell, 598 So.2d 454 (La.App. 2d Cir.1992).
In the instant case, the proof of the lesser included offense of aggravated kidnapping was included within the defendant's conviction for second degree murder. Under the circumstances of this case, defendant's punishment for both the second degree felony murder and aggravated kidnapping subjects him to constitutionally prohibited double jeopardy. As such, the conviction for the lesser but included felony of aggravated kidnapping must be reversed and the sentence vacated.

Assignment of Error No. 3:

Excessive sentences
By this assignment, the defendant contends that his sentences are excessive. He also argues that the trial court failed to comply with LSA-C.Cr.P. art. 894.1 in imposing the sentences. Specifically, defendant argues that this court must consider whether a statutorily mandated sentence must yield to the constitutional prohibition against excessive punishment. As stated above, the defendant timely filed a motion to reconsider sentence raising these claims before the trial court. However, because we have reversed the defendant's aggravated kidnapping conviction and vacated that sentence, we shall not review the excessive sentence claim as it relates to that sentence.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2 Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with the statute. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (La.1988). There is no requirement *726 that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2 Cir.3/1/00), 754 So.2d 392; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
In State v. Jones, 31,613 (La.App. 2 Cir.4/1/99), 733 So.2d 127, this court addressed the issue of mandatory sentences and compliance with LSA-C.Cr.P. art. 894.1, as follows:
Failing to articulate reasons for the sentence as set forth in LSA-C.Cr.P. art. 894.1 when imposing a mandatory life sentence is not an error. Articulating reasons or factors would be an exercise in futility since the court has no discretion. State v. Williams, 445 So.2d 1264 (La.App. 3d Cir.1984), writ denied, 449 So.2d 1346 (La.1984).
The second prong of the test addresses whether the sentence imposed is too severe or excessive in light of the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345. There is no proportionality guarantee in non-capital cases unless the reviewing court finds the sentence is grossly disproportionate to the circumstances of the offense. See, Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); State v. Delaughter, 29,974 (La.App.2d Cir.12/10/97), 703 So.2d 1364; State v. Callahan, supra at fn. 2.
The defendant was convicted of second degree felony murder, a violation of LSA-R.S. 14:30.1 A(2)(a). The punishment for this offense is set forth in paragraph B of the statute as follows:
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
LSA-R.S. 14:130.1 B(1) provides the punishment provision for the defendant's obstruction of justice conviction as follows:
(1) When the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, the offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both.
It is within the legislature's authority to determine the length of the sentence imposed for crimes classified as felonies, and the courts are charged with applying these punishments unless they are found to be unconstitutional. State v. Armstrong, 32,279 (La.App.2d Cir.9/22/99), 743 So.2d 284. The jurisprudence requires that the trial court presume that a mandatory minimum sentence is constitutional and that it does not impose excessive punishment. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Juarez, 624 So.2d 26 (La. App. 2d Cir.1993).
In Johnson, the Louisiana Supreme Court stated:

*727 [T]o rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that: [h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
In the instant case, the defendant has failed to present any evidence to show that his particular circumstances warrant a departure from the legislatively mandated sentence. Considering the nature of the defendant's present conviction and his inability to refrain from drug-related criminal activity, the trial court did not err in imposing a life sentence. Contrary to defendant's argument, the record reflects that the trial judge reviewed and considered the contents of the pre-sentence investigation report and noted the pertinent factors of Article 894.1 in arriving at the appropriate sentence for this defendant. As such, the sentence of twenty years at hard labor on the obstruction of justice conviction is neither shocking nor disproportionate to the crime committed nor inappropriate in light of defendant's egregious conduct. We find no abuse of the trial court's discretion in sentencing this defendant. Therefore, the sentences are not excessive.
This assignment lacks merit.

PRO SE ASSIGNMENTS
In a pro se brief, defendant challenges his convictions and sentences urging seven additional assignments of error.

Supplemental Assignment of Error No. 1:

Motion to Quash
By this supplemental assignment of error, defendant claims that he was prejudiced when the trial court denied his motion to quash the September 13, 1999 indictment charging him with obstruction of justice. He argues that the charge should not have been joined for trial with the charges of second degree murder and aggravated kidnapping and the charge set forth in the indictment is "disjunctive."
The grand jury indictment, signed by the district attorney, charging the defendants with obstruction of justice, states in pertinent part:
Michael O'Shay Lowery ...
Count 1: did commit Obstruction of Justice in that they did tamper with evidence with the specific intent to distort the results of a criminal investigation or proceeding and which evidence was relevant thereto.
We find nothing disjunctive about the wording of this charge and the indictment clearly complies with LSA-C.Cr.P. art. 465. There can be no question that the district attorney has the unfettered, statutorily protected, discretion to decide who, when and how to prosecute an accused in his district. LSA-C.Cr.P. art. 61.
The trial court minutes for September 16, 1999 reflect that the district attorney made an oral motion in open court for "jointer" (sic) which was granted over objection of defendant's counsel. On September 17, 1999, defendant filed a motion to quash pursuant to LSA-C.Cr.P. art. 495 and 495.1. At a hearing held that same day, the trial court denied the motion to quash. Defense counsel objected to the ruling. The record on appeal does not contain transcripts of either hearing.
LSA-C.Cr.P. art. 495.1 states:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, *728 the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
Motions to sever offenses are addressed to the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion. Further, the defendant carries a heavy burden of proof when he alleges prejudicial joinder of offenses. State v. Smith, 600 So.2d 745, 748 (La.App. 2d Cir.1992). Factual rather than conclusory allegations are required. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012; State v. George, 26,867 (La.App.2d Cir.4/5/95), 652 So.2d 1382. If the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more transactions connected together or forming parts of a common scheme they may be charged in the same indictment and tried together. Smith, supra at 747; State v. Mims, 478 So.2d 685 (La.App. 2d Cir.1985); LSA-C.Cr.P. art. 493.
In State v. Smith, supra, this court stated:
In determining whether prejudice may result from a joinder of offenses, a trial court should consider whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Washington, 386 So.2d 1368 (La.1980); State v. Gray, supra [556 So.2d 661 (La. App. 3d Cir.1990)]. A severance need not be granted if prejudice may effectively be avoided by other safeguards. State v. Celestine, supra [452 So.2d 676 (La. 1984)]; State v. Gray, supra.

In the instant case, the defendant has failed to show how he was prejudiced by the joinder of these offenses. The offenses clearly arose out of the same transaction which had an underlying common scheme, i.e., the purchase of cocaine. Further, without the transcript of the hearings on the state's motion for joinder and motion to quash, there is nothing for this court to review.
Consequently, this assignment of error lacks merit.

Pro Se Supplemental Assignment of Error No. 2:

Denial of motion in limine. Request for Prieur hearing
By this supplemental assignment of error, defendant contends that the trial court erred in denying his motion in limine. The defendant claims that the court should have precluded the introduction of any evidence regarding:
1. Statements made by defendant that the victim be taken to Shreveport to be killed and/or his body disposed; and
2. The defendant's attempt to purchase or the purchase of drugs from Derrick Mitchell.
In his motion, the defendant argues that the above evidence was irrelevant hearsay, which was more prejudicial than probative. He also argued that the evidence was inadmissible "other crimes" evidence. After hearing argument of counsel, the trial court denied this portion of defendant's motion finding that the statements made by defendant are admissions indicating intent. The court further held that evidence of an attempt to purchase drugs is evidence directly related to the commission of the offenses charged, is part of the res *729 gestae of these crimes, and is not evidence of "other crimes." Since the state was not attempting to introduce evidence of "other crimes," the trial court concluded that there was no need for a Prieur notice or hearing.
The trial court's determination regarding the relevancy of evidence is entitled to great weight and will not be overturned on appeal absent a clear abuse of discretion. State v. Jordan, 31,568 (La. App.2d Cir.2/24/99), 728 So.2d 954, writ denied, 99-0893 (La.10/8/99), 750 So.2d 177; State v. Gay, 29,434 (La.App.2d Cir.6/18/97), 697 So.2d 642. The relevancy of evidence should be determined by the purpose for which it is offered. State v. Caston, 26,415 (La.App.2d Cir.10/26/94), 645 So.2d 1202, writ denied, 94-3137 (La.5/5/95), 654 So.2d 337.
Evidence that forms part of the res gestae of a crime is always admissible. State v. Anthony, 427 So.2d 1155 (La.1983). The "res gestae" doctrine encompasses not only spontaneous utterances and declarations made before and after commission of the crime, but also testimony of witnesses regarding what they heard or observed before, during, or after the commission of the crime if a continuous chain of events is evident under the circumstances. State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074; State v. Walters, 25,587 (La.App.2d Cir.1/19/94), 630 So.2d 1371, appeal after remand, 26,647 (La.App.2d Cir.12/7/94), 648 So.2d 7, writ denied, 95-0422 (La.6/16/95), 655 So.2d 340; State v. Scott, 31,379 (La. App.2d Cir.10/28/98), 720 So.2d 415, writ denied, 99-0170 (La.5/14/99), 741 So.2d 644. Pursuant to LSA-C.E. art. 801D(4) res gestae evidence is an exception to the hearsay rule and no prior notice to the defense is required. State v. Bourque, 622 So.2d 198 (La.1993), appeal after remand, 96-0842 (La.7/1/97), 699 So.2d 1, cert. denied, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998); LSA-C.Cr.P. art. 720.
The record reflects that the evidence presented was being offered as part of the res gestae in connection with the crimes committed. Thus, we find that the defendant's statements were not hearsay and any testimony regarding the attempted drug purchase was not inadmissable evidence of "other crimes." The trial court correctly allowed the admission of this evidence.

Pro Se Supplemental Assignments of Error Nos. 3 & 4:

Jury instructions
By these assignments of error, the defendant contends that the trial court erred when it refused to allow one of the four requested special jury instructions. He also argues that the trial court's reasonable doubt instruction was erroneous under Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). Defendant points out that his counsel failed to make a contemporaneous objection to the reasonable doubt instruction or the court's refusal to give the proposed special instruction. Although procedural law set forth in LSA-C.Cr.P. art. 801 states that the failure to assert a timely objection waives the issue on appeal, the jurisprudence has carved out an exception to this rule where such alleged trial errors raise overriding due process considerations. State v. Williamson, 389 So.2d 1328 (La. 1980).
The record reflects that the defendant filed two requests for special jury instructions. The trial judge and counsel held a charging conference during which they reviewed the judge's proposed instructions and those proposed by counsel. The results of the conference were placed on the record prior to closing arguments. The trial court allowed defendant's proposed *730 instructions numbers one and four and had already included language covering defendant's proposed instruction number three. However, the trial court concluded that defendant's proposed instruction number two was unnecessary. The proposed instruction number two provided in part: "Defendant cannot be convicted of aiding and abetting because of guilt by association."[4]
LSA-C.Cr.P. art. 807 provides, in pertinent part, as follows:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Where the substance of a proposed special jury charge is already included in the instructions prepared by the trial court, the failure to give the instruction is not error. State v. Ruple, 437 So.2d 873 (La.App. 2d Cir.1983). Even assuming error, the failure to give a special jury charge constitutes reversible error only when there is a miscarriage of justice, prejudice to substantial rights of the accused, or a violation of constitutional or statutory rights. State v. Edwards, 25,963 (La.App.2d Cir.5/4/94), 637 So.2d 600.
In Edwards, this court held that the trial court did not err when it failed to give a requested special jury instruction stating that mere presence at or near a crime scene does not render one guilty of the offense committed. In so holding, this court stated:
Like the trial court, we find that the gist of the requested charge was sufficiently included in the general charge concerning the state's burden of proof, as well as the portion establishing the presumption of the defendant's innocence. Thus, the jury was fully apprised that, in order to convict, more evidence than the defendant's mere presence at the scene of the crime was necessary.
The analysis in Edwards is applicable to the present case. The substance of the requested charge was sufficiently included in the general charge concerning the state's burden of proof. Consequently, on this record there is no miscarriage of justice, prejudice or violation of rights that would warrant a reversal because of the trial court's failure to give the defendant's special jury instruction. This assignment of error lacks merit.
Defendant relies on the holding of the United States Supreme Court in Cage v. Louisiana, supra, to challenge the validity of the "reasonable doubt" jury instruction. In Cage, the Court condemned the use, in a reasonable doubt instruction, of the phrases "grave uncertainty," "actual substantial doubt" and "moral certainty." Later, in a Fifth Circuit case, Humphrey v. Cain, 138 F.3d 552 (5th Cir.1998), the court condemned the use of the phrases "grave uncertainty," "moral uncertainty," "actual or substantial doubt" and "serious doubt for which you could give reason." The courts held, in both cases, that such definitions diminished the state's burden of proof in violation of the Due Process Clause.
The reasonable doubt instruction used at defendant's trial provided that "a reasonable doubt is not a mere possible doubt. It should be an actual doubt, such a doubt as a reasonable person would seriously entertain. It is a serious doubt for which you could give a good reason." Defendant contends the terms "actual," "seriously entertain," "serious doubt," and "a good reason" render the instruction invalid.
*731 Citing the United States Supreme Court's decision in Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), our supreme court has held that a Cage instruction does not require reversal of a defendant's conviction on the ground that it diluted the state's burden of proving the accused's guilt beyond a reasonable doubt in violation of the due process guarantees. State v. Smith, 91-0749, (La.5/23/94), 637 So.2d 398, 406, cert. denied, 513 U.S. 1045, 115 S.Ct. 641, 130 L.Ed.2d 546 (1994). Thus, since the instant trial court's instruction as a whole conveyed the concept of reasonable doubt to the jury, the inclusion of the phrases "actual doubt," "seriously entertain," and "a serious doubt for which you could give a good reason" is not a ground for reversing defendant's conviction.
Consequently, under Louisiana jurisprudence, in consonance with U.S. Supreme Court decisions, the challenged portion of the instant reasonable doubt instruction does not constitute error. Further, contrary to defendant's claim, his counsel was not ineffective in failing to object to the instruction.
Accordingly, this assignment of error lacks merit.

Pro Se Supplemental Assignment of Error No. 5:

Failure to re-instruct the jury
Defendant next contends that the trial court erred when it failed to recharge the jury following its request for a copy of the jury instructions, or in the alternative, to be provided the charts prepared by the state outlining the elements of the offenses.
The record reflects that the trial court acknowledged a note from the jury requesting a copy of the jury instructions. The trial court correctly informed the jury that it could not give the jury a copy of the instructions, but that it could answer a specific request on a "case-by-case basis." The jury then requested the charts which had been prepared by the state outlining the offense. The charts had not been admitted into evidence as exhibits. Again, the trial court stated that the charts could not be given to the jury to take into their deliberations. No request was made to recharge the jury.
LSA-C.Cr.P. art. 808 provides:
If the jury or any member thereof, after having retired to deliberate upon the verdict, desires further charges, the officer in charge shall bring the jury into the courtroom, and the court shall in the presence of the defendant, his counsel, and the district attorney, further charge the jury. The further charge may be verbal.
In the instant case, the jury did not request that they be further charged by the trial court. Defendant did not request that the trial court further charge the jury and no objection was made to the court's failure to further charge the jury.[5] Pursuant to LSA-C.Cr.P. art. 841, "an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence."
Nevertheless, the trial court's rulings were not erroneous. The trial court is prohibited from providing the jury with a copy of the written charges. State v. Yoxtheimer, 301 So.2d 318 (La.1974). Louisiana jurisprudence holds that the trial court has not erred when it does not further charge the jury following a request *732 for a copy of the written charges or copies of the criminal code articles. State v. Obney, 505 So.2d 211 (La.App. 3d Cir.1987), writ denied, 508 So.2d 818 (La.1987); State v. Simms, 465 So.2d 769 (La.App. 5th Cir.1985). There is no basis on this record to warrant a departure from the existing jurisprudence. As such, this assigned error lacks merit.

Pro Se Assignment of Error No. 6:

Prosecutorial misconduct
By this assigned error, defendant contends the district attorney intentionally stated facts to the jury that were purportedly untrue. Also, defendant claims that the district attorney's actions indicate a vindictiveness prohibited by United States v. Krezdorn, 718 F.2d 1360, 1365 (5th Cir. 1983), cert. denied, 465 U.S. 1066, 104 S.Ct. 1416, 79 L.Ed.2d 742 (1984).
Defendant concedes in brief that there was no contemporaneous objection to the district attorney's remarks. Pursuant to LSA-C.Cr.P. art 841, "an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence." Consequently, these alleged errors were not properly presented for review on appeal.
Moreover, the permissible scope and extent of the opening statement is left to the sound discretion of the trial court. State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713, rehearing denied. The district attorney may utilize her opening statement to explain the state's theory of the case. State v. Marquer, 446 So.2d 1258 (La.App. 4th Cir.1984), writ denied, 450 So.2d 359 (La.1984), writ denied, 452 So.2d 168 (La.1984), cert. denied, 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984).
Additionally, the district attorney is afforded considerable latitude in making her closing argument to the jury. State v. Frost, 97-1771 (La.12/1/98), 727 So.2d 417. A district attorney may express an opinion about the defendant and/or the evidence presented by the defendant when it is apparent that her opinion is based upon the evidence of record. State v. Frost, supra at 432. Commenting on the credibility of the witnesses is proper and within the scope of closing argument. State v. Wafer, 31,078 (La.App.2d Cir.9/23/98), 719 So.2d 156, writ denied, 99-1114 (La.10/1/99), 747 So.2d 1137.
After a thorough review of the record, we find that there was no impropriety in the statements made or arguments by the district attorney during either the opening statement or closing argument. In each instance of which defendant complains the facts stated or argued derived directly, or indirectly and circumstantially, from the evidence admitted at trial. In regard to the statement of Corey Brown and the inconsistencies contained therein when compared to his trial testimony, we note that Corey was subject to cross-examination by defense counsel. Thus, it is reasonable to presume that counsel was utilizing the contents of that statement during his cross-examination of Corey regarding any statements he may have made that were inconsistent with his trial testimony.
Finally, we find that there is absolutely no merit on this record to defendant's contention that he was prosecuted out of vindictiveness.
The defendant's assignment of error lacks merit.

Pro Se Supplemental Assignment of Error No. 7:

Ineffective assistance of counsel
By this assigned error, defendant contends he was denied effective assistance of *733 counsel and/or a fair trial based on his counsel's failure to:
1) Timely make a Batson objection;[6]
2) Timely object to the admission of "other crimes" evidence and denial of a Prieur hearing;
3) Timely object to the failure to give the requested special jury instruction and/or the reasonable doubt instruction;
4) Timely object to the trial court's failure to provide a copy of the written jury instructions to the jury during deliberations and/or to request that the jury be re-charged; and
5) Conduct a proper or sufficient pre-trial investigation.
As noted by defendant, generally an ineffective assistance of counsel claim is more properly raised in a timely application for post-conviction relief ("PCR") where an evidentiary hearing can be held to resolve issues which are not fully set forth in the record. This is because PCR creates the opportunity for a full evidentiary hearing. State v. Owens, 32,640 (La. App.2d Cir.10/27/99), 763 So.2d 628; State v. Pratt, 32,302 (La.App.2d Cir.9/22/99), 748 So.2d 25. On this record, it is impossible to glean all of the rationale that may explain counsel's conduct at trial. Accordingly, because the current record is insufficient for a thorough review of this argument, this assignment of error lacks merit. State v. Lemon, 29,587 (La.App.2d Cir.8/20/97), 698 So.2d 1057.

ERROR PATENT
The trial court gave an incomplete advisement to the defendant of his rights under LSA-C.Cr.P. art. 930.8. The trial court informed the defendant that he had "two years from the date your conviction (sic) are final to file any applications for post conviction relief." This advisement may have been misleading to the defendant.
The trial court is hereby directed to provide defendant with written notice stating a correct and complete advisement of his rights under LSA-C.Cr.P. art. 930.8(A), specifically that he has two years after his conviction and sentence have become final to file for post-conviction relief. This notice should be sent to the defendant within 30 days of the rendition of this opinion and the trial court clerk is directed to file proof of defendant's receipt of the notice in the record of this proceeding. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); State v. Smith, 600 So.2d 745 (La.App. 2d Cir.1992).

CONCLUSION
For the foregoing reasons, the defendant's second degree murder and obstruction of justice convictions and sentences are affirmed. Defendant's aggravated kidnapping conviction is reversed and his sentence is vacated.
SECOND DEGREE MURDER AND OBSTRUCTION OF JUSTICE CONVICTIONS AND SENTENCES AFFIRMED; AGGRAVATED KIDNAPPING CONVICTION REVERSED AND SENTENCE VACATED.
NOTES
[1] Corey Brown's first name is also spelled Cory in portions of the record.
[2] State v. Mitchell, 33,277 (La.App.2d Cir.3/1/00), 753 So.2d 985.
[3] State v. Lowery, 33,584 (La.App.2d Cir.6/21/00), 765 So.2d 461.
[4] The special jury charges also included a definition of aiding and abetting.
[5] The defendant also challenges his counsel's failure to object when the trial court did not further charge the jury.
[6] Under his second supplemental assignment of error regarding the denial of the motion in limine, defendant mentions briefly that his attorney made an untimely Batson objection which was summarily dismissed by the trial court. Defendant did not assign separate error to this claim nor argue it; therefore, this claim is abandoned. State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990); State v. Toney, 26,711 (La.App.2d Cir.3/1/95), 651 So.2d 387.