763 So.2d 628 (1999)
STATE of Louisiana, Appellee,
v.
Gary OWENS, Appellant.
No. 32,640-KA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
Writ Denied June 16, 2000.
*630 Louisiana Appellate Project by Wilson Rambo, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Brian L. King, Asst. Dist. Attys., Counsel for Appellee.
Before STEWART, PEATROSS and KOSTELKA, JJ.
STEWART, J.
The defendant, Gary Owens, was found guilty as charged of armed robbery, a violation of La. R.S. 14:62. After being adjudicated a second felony offender, the defendant was sentenced to serve 100 years at hard labor without benefit of probation, parole, or suspension of sentence. The defendant now appeals his conviction and sentence.[1] We affirm.

FACTS
The offense at issue occurred on January 13, 1998. Fred Palmer ("Palmer"), the owner of the Country Corners Pawn Shop in Caddo Parish, testified that Darien Bates ("Bates"), who was charged as a codefendant in this matter, first entered the pawn shop to get a price quote for pawning or selling a small diamond ring. Bates returned to the pawn shop a short time later with the defendant for the assumed purpose of pawning the ring. The defendant gave his driver's license to Palmer so that a pawn ticket containing the defendant's name and address could be generated. Once the computer generated the ticket, Palmer presented it to the defendant to sign. The defendant then grabbed Palmer by the back of the head and slammed his head into the glass counter between them. Palmer felt a pistol being shoved behind his head and heard the defendant say, "You make one more move, I'll kill you."
The defendant and Bates dragged Palmer across the top of the counter and threw him onto the floor. While Bates attempted to tape Palmer's hands and eyes with duct tape, the defendant went behind the counter and began gathering jewelry, guns, and cash. Palmer could hear the items hitting the bottom of what appeared to be a sack. The duct tape would not stick to Palmer, so Bates asked the defendant what he should do to restrain Palmer. The defendant threw an electrical cord to Bates and told him to tie Palmer with it. Palmer could hear the defendant attempting to open the cash register by hitting buttons. Palmer told the defendant how to open the register after the defendant became agitated and threatened to kill him. As the defendant and Bates left, Palmer heard a gunshot and thought that the defendant was shooting at him. However, *631 the shot was apparently fired at the computer monitor in an attempt to disable it and prevent disclosure of identifying information contained on the pawn ticket.
Once the defendant and Bates exited the pawn shop, Palmer tore off the duct tape and the electrical cord, grabbed a sawed-off shotgun from beneath the counter, and ran out after the robbers. He fired two shots at the defendant's vehicle and attempted to chase them. Debra Turner, the owner of a business across the street from the pawn shop, heard the gunfire and saw a red or maroon car speeding away from the pawn shop. She also attempted to chase the defendant's vehicle. However, the defendant was able to flee the scene.
After the robbery, Palmer identified the defendant in a photographic line-up. A duplicate of the pawn ticket containing the defendant's name and address was obtained from the computer in the pawn shop, and the defendant's fingerprint was taken from the glass counter in the pawn shop. The defendant was subsequently arrested, charged by bill of information with armed robbery, and found guilty as charged after a trial by jury. The defendant was adjudicated a second felony offender and sentenced to 100 years imprisonment without benefit. The defendant now appeals and asserts six assignments of error.

DISCUSSION
In his first assignment of error, the defendant asserts that the evidence was insufficient to sustain his conviction. In his second assignment of error, the defendant asserts that the trial court erred in finding him competent to proceed to trial and assist in his defense. The defendant has briefed neither of these assignments of error. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2nd Cir.1989), writ denied, 558 So.2d 1123 (La. 1990). Therefore, we consider these two assignments of error abandoned, and we will proceed to address those assignments of error briefed by the defendant.

Ineffective Assistance of Counsel
The defendant contends that trial counsel was ineffective in failing to object to the prosecution's reference to "other crimes" during closing arguments. In the rebuttal argument during closing, the prosecution referred to the fact that the defendant at the age of sixteen was charged with second degree murder. Neither an objection nor a motion for a mistrial was made in response to this reference. As such, the error was not preserved for appellate review by a contemporaneous objection as required by La.C.Cr.P. art. 841. However, the defendant now contends that the prosecution's remark was impermissible and prejudicial and that a reversal is warranted.
Generally, ineffective assistance of counsel claims are more properly addressed in applications for post-conviction relief by which a full evidentiary hearing can be conducted before the trial court. Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify appellate consideration. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982). In this instance, the record is sufficient to address the claim of ineffective assistance presented by the defendant.
The two-part test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is used to assess ineffective assistance of counsel claims. State v. Fuller, 454 So.2d 119 (La.1984). Strickland, supra, requires the defendant to show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's deficient performance will have prejudiced the defendant if it is shown that the errors were so serious as to have *632 deprived the defendant of a fair trial. Strickland, supra. To carry this burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
La.C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
Although La.C.Cr.P. art. 770 is couched in mandatory terms, it is a rule for trial procedure and is subject to harmless error review. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94; State v. Ingram, 29,172 (La.App. 2nd Cir. 1/24/97), 688 So.2d 657, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505. Trial error is harmless where the verdict rendered is "surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Ingram, supra. Additionally, in order for an improper argument by the State to constitute reversible error, it must be shown that the remark influenced the jury and contributed to the verdict. State v. Williams, 447 So.2d 495 (La.App. 3 rd Cir. 1984), writ denied, 450 So.2d 969 (La. 1984).
Despite the defendant's failure to preserve the issue of the prosecution's reference to "other crimes" for appeal, we find the prosecution's remark to be harmless error. The record is replete with evidence in support of the jury's verdict. Not only did Palmer, the victim of the armed robbery, identify the defendant, but the defendant left proof of his identification at the crime scene, namely, his fingerprints on the glass counter and his name and address on the pawn ticket obtained from information on the driver's license which the defendant presented to Palmer just prior to the robbery. Palmer testified to the details of the crime, including that the defendant held a gun to his head and threatened to kill him. The testimony of Elizabeth Hughes, a defense witness, placed a maroon Beretta later identified as the defendant's vehicle in front of the pawn shop at the time of the armed robbery. Also, Daniel Lanier, the defendant's cousin, testified that he spoke with the defendant on January 14, 1998, at which time the defendant stated that he had "made a lick." Lanier explained that "made a lick" means robbing something or getting away with something good. Lanier also testified that he saw "a lot of guns and jewelry" at the defendant's house.
Considering the substantial evidence of the defendant's guilt, we find that the guilty verdict was "surely unattributable" to the prosecution's reference to "other crimes" in closing arguments. In making this finding, we note that credit should be accorded to the good sense and fairmindedness of jurors who have heard the evidence and have been instructed by the trial judge that arguments of counsel are not evidence. State v. Dupre, 408 So.2d 1229 (La.1982). Here, the trial court informed the jury that opening and closing statements are not considered evidence and are not to be considered as evidence.
Having found that the erroneous reference to "other crimes" was harmless error, we also find that the defendant failed to show a reasonable probability that the result of trial would have been different in the absence of trial counsel's error. As such, the defendant's ineffective assistance of counsel claim lacks merit.

Habitual Offender Adjudication
The defendant contends that the evidence is insufficient to support his adjudication as an habitual offender. First, the defendant asserts that the record *633 does not contain certified copies of the court minutes or transcript reflecting the defendant's conviction and sentence for the manslaughter offense used as the basis for the habitual offender adjudication. This contention is in error. Certified copies of the minutes, the sentencing transcript, and the indictment for the prior offense are included in the record as an exhibit.
Second, the defendant asserts that there is no affirmative showing that he was sufficiently advised of his rights and that he knowingly and intelligently waived them at the time of his previous plea of guilty. The indictment indicates that on June 24, 1993, the defendant was charged with second degree murder, a violation of La. R.S. 14:30.1. The minutes indicate that on February 15, 1994, the defendant, with counsel present, entered a guilty plea to the reduced charge of manslaughter. The minutes further provide that the trial court informed the defendant of "his constitutional rights as per Boykin vs. Alabama." The sentencing transcript shows that the defendant was sentenced to seven years at hard labor.
Louisiana's habitual offender law, La. R.S. 15:529.1(D)(1)(b), provides in relevant part:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis thereof, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
Through the presumption of regularity of judgment, the State met its burden of proof at the habitual offender proceeding by introducing the indictment, minutes, and sentencing transcript of the defendant's prior offense and by establishing through fingerprints that the defendant was the same person who pled guilty to manslaughter in 1994.
The defendant filed no written response challenging the validity of his prior conviction and entered no oral objections to the validity of his prior conviction. The defendant did not come forward with any affirmative evidence as required by State v. Shelton, 621 So.2d 769 (La.1993), to show some infringement of his rights or procedural irregularity in the taking of his guilty plea to the manslaughter charge. Because the defendant failed to comply with the requirements of La. R.S. 15:529.1(D)(1)(b), we find that he is barred from directly attacking the validity of his prior offense on appeal. The defendant was appropriately adjudicated an habitual offender.

Sentencing
In two assignments of error, the defendant contends that his sentence is excessive and that the trial court failed to comply with the requirements of La. C.Cr.P. art. 894.1 in fashioning the sentence. The defendant specifically contends that the trial court gave insufficient reasons for imposing the sentence of 100 years.
A defendant has 30 days following imposition of sentence, or within a longer period as set by the trial court at sentencing, to make or file a motion for reconsideration of sentence. La.C.Cr.P. art. 881.1(A)(1). The failure to make such a motion or to include specific grounds upon which a motion to reconsider may be based shall preclude the defendant on appeal *634 from raising an objection to the sentence or from urging any grounds not raised in the motion. La.C.Cr.P. art. 881.1(D). Neither our Code of Criminal Procedure nor our jurisprudence contemplates an "out of time" motion to reconsider sentence. State v. King, 95-344 (La.App. 3 rd Cir. 10/4/95), 663 So.2d 307, writ denied, 95-2664 (La.3/15/96), 669 So.2d 433.
The defendant was sentenced on November 5, 1998. The trial court then filed written reasons for the sentence on December 18, 1998. Not until January 28, 1999, well over sixty days from the date of sentencing, did the defendant file an "out of time" motion to reconsider the sentence. The record does not disclose any additional period of time set by the trial court for the defendant to file for reconsideration of sentence. Nor does the record disclose any objection at sentencing on the basis of excessiveness of the sentence. Because the defendant failed to timely file for reconsideration, he is barred from attacking his sentence on appeal and from challenging the sentence as excessive. See State v. Henton, 28,576 (La.App. 2nd Cir. 9/25/96), 682 So.2d 777, 781, writ denied, 96-2590 (La.3/27/97), 692 So.2d 391, and cases cited therein.
However, from our review of the record, we find that the defendant's sentence is commensurate with the crime and with his adjudication as a second felony offender and that the sentence neither shocks the sense of justice nor constitutes a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). Contrary to the defendant's assertion, the trial court complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and stated sufficient reasons for imposing the 100 year sentence. The trial court considered the applicable penalty range, the defendant's age and educational background, as well as the defendant's familial status. The trial court also considered medical reports documenting the defendant's mental health issues, particularly his aggressiveness, anti-social behavior, and conduct disorder. However, the trial court found that the defendant knew right from wrong. This finding is supported by the record. Additionally, the trial court reviewed the facts of the violent armed robbery and noted that the defendant did not exhibit any remorse or sorrow for his part in the crime. The defendant's criminal record and prior manslaughter conviction were also reviewed by the trial court prior to imposing sentence. The 100 year sentence was imposed after the trial court noted the defendant's need for correctional treatment in a custodial environment and the probability that he would commit another violent crime if let out any sooner.
Based on the above discussion, we find no merit in the defendant's assignments of error pertaining to his sentence.

CONCLUSION
For the reasons discussed, we affirm the defendant's conviction for armed robbery and sentence of 100 years without benefit.
AFFIRMED.
NOTES
[1] Although it appears that the defendant's appeal is untimely under La.C.Cr.P. art. 914, having been taken more than five days after rendition of the judgment and after an untimely motion for reconsideration of sentence, we will entertain the appeal in the interest of judicial economy, noting that the defendant would be entitled to reinstatement of his appellate rights under State v. Counterman, 475 So.2d 336 (La.1985). See State v. Jonas, 29,750 (La.App. 2nd Cir. 8/20/97), 698 So.2d 744.