936 So.2d 255 (2006)
STATE of Louisiana, Appellee,
v.
Jonathon Lee SMITH, a/k/a Jonathon Louis Smith, Chavis C. Grant and Quincy Hill, Appellants.
No. 40,894-KA.
Court of Appeal of Louisiana, Second Circuit.
July 26, 2006.
*257 Louisiana Appellate Project by Edward K. Bauman, for Appellant, Quincy Hill.
J. Spencer Hays, Bossier City, for Appellant, Jonathon Lee Smith.
Louisiana Appellate Project, by James E. Beal, for Appellant, Chavis C. Grant.
Paul J. Carmouche, District Attorney, Lea Hall, Jr., Brian H. Barber, Ron Christopher Stamps, Assistant District Attorneys, for Appellee.
Before PEATROSS, MOORE & LOLLEY, JJ.
PEATROSS, J.
Three defendants, Jonathon Lee Smith, Chavis C. Grant and Quincy Hill, were tried together and convicted as charged with one count of armed robbery committed with a firearm, violations of La. R.S. 14:64 and La. R.S. 14:64.3. The court sentenced Hill to serve 20 years' imprisonment at hard labor without benefit of probation, parole or suspension of sentence for the armed robbery, and further sentenced him to serve a consecutive sentence *258 of 5 years' imprisonment without benefit of probation, parole or suspension of sentence for the use of a firearm. The court sentenced Grant as a habitual offender, second, to serve the statutory minimum 49½-year sentence of imprisonment at hard labor without benefit of probation, parole or suspension of sentence, and to a consecutive 5-year sentence of imprisonment without benefit of probation, parole or suspension of sentence for the use of a firearm. The court sentenced Smith as a habitual offender, second, to serve 55 years' imprisonment at hard labor without benefit of probation, parole or suspension of sentence, and to a consecutive 5-year sentence of imprisonment without benefit of probation, parole or suspension of sentence for the use of a firearm. All three defendants now appeal. For the reasons stated herein, the convictions of all three defendants are affirmed. Hill's sentence is affirmed. Grant's and Smith's sentences are amended and, as amended, are affirmed.

FACTS
James Robinson is a resident of Shreveport who, in 2003, lived on Myrtle Street in the Lakeside neighborhood. In addition to his disability income, Mr. Robinson earned money mowing lawns. On September 4, 2003, Mr. Robinson had been out shopping. During his shopping trip, Mr. Robinson told an acquaintance at the store that he had a good day at work and had around five hundred dollars on his person. That afternoon, he returned home and, at about 4:45, he was sitting on his car in his driveway having a conversation with an acquaintance he knew as Marcus. Mr. Robinson's next door neighbors, Chameka Black and Breon Kelly, were sitting outside on their porch at this time.
As Mr. Robinson talked to Marcus, two vehicles drove up and stopped in front of Mr. Robinson's home. Ms. Black also saw the cars arrive. Mr. Robinson testified that Grant and Smith got out of the car in front and Hill got out of the following car. Mr. Robinson recognized all of the men and testified that he had been acquainted with these men for over ten years; he said that they all "grew up in the neighborhood together." He further testified that he and Smith had once had a fight, but that had occurred long prior to this incident. Ms. Black did not recognize and could not identify any of the men who got out of the car.
When the men got out of the cars, they all approached Mr. Robinson to make small talk. Mr. Robinson said that he did not see the men with any guns; Ms. Black said that she saw one of the men armed with a handgun and at that point, she and her boyfriend left their porch and went inside. Mr. Robinson testified that, after speaking to him, the men all walked away and gathered in a huddle. Mr. Robinson said that the men then walked back to the cars and retrieved weapons. He described the weapons; Grant had a large chrome revolver, Hill had a rifle Mr. Robinson called a "chopper" (appearing to be either an AK-47 or an SKS), and Smith had a small semi-automatic pistol. Mr. Robinson testified that, when the men approached him, they all pointed the guns at him and began cursing him and that Grant then said, "[p]layboy, let me get that with you." Mr. Robinson then gave the money to Grant and the three men left.
Mr. Robinson called the Shreveport Police Department ("SPD"). Police interviewed Mr. Robinson, who identified the robbers by their names. Police also interviewed a man who identified himself as Marcus George. This man gave his date of birth as June 23, 1982, and told police that he knew all three Defendants. The interview with George was tape recorded; *259 the tape was apparently not provided to Defendants because it contained no exculpatory material. Later, Mr. Robinson and George identified all three Defendants in a photo lineup; George's identification was also tape recorded.
The three Defendants were then arrested, charged and tried for armed robbery with a firearm. Witnesses at the trial included Mr. Robinson, James Cromer (the investigating SPD detective), Ms. Black and Mr. Kelly. The jury heard Mr. Robinson and Ms. Black talk about the robbery; Mr. Kelly denied that he saw anything or that he was even present. The jury also heard that Mr. Robinson had a criminal record; he had convictions for aggravated battery, attempted possession of a firearm by a convicted felon, theft of goods and disturbing the peace. Mr. Robinson's firearm conviction was obtained by a guilty plea in exchange for a "time served" sentence. The plea and sentence agreement occurred during the pendency of this robbery case where Mr. Robinson was the victim; an assistant district attorney testified that the sentence was the result of the weakness of the State's case against Mr. Robinson and not due to Mr. Robinson's testimony against these Defendants.
A subpoena was issued for George to appear at the trial but the subpoena was never served, apparently because George was not at the address he gave police. Consequently, he did not testify and his positive identification of Defendants as the robbers was not put before the jury. The jury voted 11-1 to convict all three men as charged.
All three Defendants filed motions for post-verdict judgment of acquittal and new trial alleging that the prosecution failed to prove their guilt beyond a reasonable doubt, which the trial court denied. All three Defendants also filed amended motions for new trial alleging that newly discovered evidence, namely, the testimony of Marcus George, warranted a new trial.
The trial court held a hearing on the motions for new trial, and a witness named Marcus George was called to testify. This witness, born on October 20, 1983, testified that he did not know the victim, Defendants or anything about this robbery and that he had never spoken to police. The detective who interviewed Marcus George in the course of the robbery investigation also testified; he said that the Marcus George called to testify at the new trial hearing was not the same person he had interviewed during the investigation. The Marcus George who testified at the hearing gave his address as Fulton Street in Shreveport; the original Marcus George had given the police a Fulton Street address, albeit at a different house number. The court allowed into evidence the tapes of the two interviews with Marcus George and the SPD detective.
The court denied the motions for new trial, finding that the testimony of the newly-discovered Marcus George would not have changed the verdict because he was not the same person who was a witness to the crime. Smith alone filed a motion to reconsider sentence, which the trial court denied. Defendants now appeal.

DISCUSSION

Quincy Hill
Assignment of Error 1. Was there sufficient evidence presented to convict Appellant of armed robbery?
Assignment of Error 2. Did the Trial Court err in denying Appellant's Motion for Post-Verdict Judgment of Acquittal and / or Motion for New Trial?

*260 Jonathan Lee Smith

Assignment of Error 3. The State of Louisiana failed to prove the guilt of Appellant, Jonathan Lee Smith, beyond a reasonable doubt.
Assignment of Error 4. The Trial Court committed error when it denied Appellant's Motion for a New Trial which motion alleged the insufficiency of the evidence.
Assignment of Error 5. The Trial Court committed error when it denied Appellant's Motion for Post-Verdict Judgment of Acquittal.
Smith and Hill, but not Grant, challenge the sufficiency of the State's evidence to convict them. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760 and 98-0282 (La.6/26/98), 719 So.2d 1048.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir. 1990), writ denied, 566 So.2d 983 (La. 1990).
In the instant case, the victim positively identified the three Defendants, both in a *261 pretrial lineup and at trial. The victim was personally acquainted with all three Defendants and their appearance and had ample time to observe the men during the robbery. The victim said that all three men were armed with firearms during the robbery, that Grant forced him to hand over his money and that all three Defendants were acting in concert to commit the crime. This testimony describes all of the elements of the crime of armed robbery committed by all three Defendants and further shows that each Defendant was armed with a firearm. The jury was called upon to evaluate the credibility of the victim and decided to accept his version of events as true. Nothing in the victim's testimony presented an internal inconsistency or an irreconcilable conflict with physical evidence, so the jury's decision to credit his testimony was not manifestly erroneous or clearly wrong.
These assignments of error are without merit.

Chavis Grant
Assignment of Error 2. The Court erred in failing to grant a new trial after it was discovered that the only eyewitness to the alleged crime, besides the victim, was not the person whom the state had tried to subpoena for trial, and could not be located, even though the state referred to said individual as an eye witness in opening argument, unintentionally misleading the jury as to corroboration of the victim's testimony.

Quincy Hill
Assignment of Error 2. Did the Trial Court err in denying Appellant's Motion for Post-Verdict Judgment of Acquittal and / or Motion for New Trial?

Jonathan Lee Smith
Assignment of Error 6. The Trial Court committed error when it denied Appellant's Motion for a New Trial alleging the discovery of new and material evidence.
Each of the Defendants urges that the trial court should have granted his motion for new trial upon the discovery that the person named Marcus George who testified at the hearing on the motion did not witness the crime. One defense theory advanced at the hearing was that there was, in reality, no witness named Marcus George.
La. C. Cr. P. art. 853 provides, in part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
. . .
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty; . . . .
In State v. Talbot, 408 So. 2d 861 (La.1980) (on rehearing), cited with approval in State v. Watts, 00-0602 (La.1/14/03), 835 So. 2d 441, the supreme court stated:
The scope of the trial judge's duty toward the motion for a new trial based upon the new evidence must be kept in mind. It was not for him to determine the guilt of [another alleged suspect] or the innocence of [the defendant]; it was not for him to weigh the new evidence as though he were a jury, determining what is true and what is false. The judge's duty was the very narrow one of *262 ascertaining whether there was new material fit for a new jury's judgment. If so, will honest minds, capable of dealing with evidence, probably reach a different conclusion, because of the new evidence, from that of the first jury? Do the new facts raise debatable issues? Will another jury, conscious of its oath and conscientiously obedient to it, probably reach a verdict contrary to the one that was reached on a record wholly different from the present, in view of evidence recently discovered and not adducible by the defense at the time of the original trial?
Appellate courts should defer to a trial court's reasonable decision in resolving a new trial motion. Talbot, supra. In the instant case, Defendants put forth the testimony of a person bearing the same name as an eyewitness to the crime who identified them as the perpetrators. This new witness was not the witness who saw the crime and identified the perpetrators to police. The fact that this new witness was unfamiliar with the crime or Defendants and could have so testified is irrelevant and could not possibly have affected the verdict. These assignments of error are without merit.

Jonathan Lee Smith
Assignment of Error 1. The State of Louisiana committed reversible error by commenting on a prior judicial determination of the sufficiency of the evidence against the defendants in its opening statement.
During his opening statement, the prosecutor described the process by which Defendants were identified and arrested. He said:
This case happened in the way that I described. Got  you've got a robbery. You've got three armed guys getting in cars, and they go away. And, when something like that happens, the police aren't immediately there. They don't have someone to nab, and whoever has done a crime like this has gotten far enough away where you can't easily find them.
What, ordinarily, happens then is you get a warrant. And warrants were gotten in this case for all three defendants, and they were subsequently arrested on different dates.

In order to get a warrant, you have to have what's called probable cause to arrest them. And, in order  in order to do that in an investigation, a detective, like the one you will hear from in this case, Detective Cromer, will begin investigating. And he'll try and find out exactly what happened in the crime and exactly who did it. (Emphasis added.)
The prosecutor then went on to describe the photo lineup process and correctly told the jury that Mr. Robinson had identified all three Defendants in a photo lineup.
There is no indication in the record that Smith objected to the emphasized language at trial. La. C. Cr. P. art. 841 provides, in part:
A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
This error, if any, was waived by Smith's failure to object to the prosecutor's statement. Further, even if the alleged error was reviewable on appeal, the emphasized language was a correct statement of the law insofar as it reflects the requirement of La. C. Cr. P. art. 202(A)(2) that, in *263 order to issue an arrest warrant, a magistrate find probable cause to believe that an offense was committed and that the person against whom the complaint was made committed it. This assignment of error is without merit.

Jonathan Lee Smith
Assignment of Error 2. The Trial Court committed error by not ordering a mistrial because of direct references by the State to another crime committed or alleged to have been committed by the defendant during questions of a witness during direct examination.
At the commencement of questioning the victim, the prosecutor asked the victim if he had moved from his former address on Myrtle Street. When the victim said that he had moved, the prosecutor and the victim engaged in the following exchange:
Q: Has it been in connection with this incident that you're here to testify about today?
A: Yes. Yes.
Q: Are you scared to be here?
A: Yes.
Q: Okay. Why are you scared?
A: Because they kept intimidating my family and me.
At that point, Grant's attorney asked for a bench conference, which was had, but not recorded. No objection to the question or the answer was put forth on the record. Thereafter, the prosecutor did not ask any other questions about whether Mr. Robinson was afraid to testify.
On appeal, Smith urges that the prosecutor's question was a direct reference to other crimes allegedly committed by Defendant, specifically that of intimidating witnesses, a violation of La. R.S. 14:129.1.
La. C. Cr. P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
The failure to object to such a reference constitutes a waiver of the issue. See, e.g., State v. Owens, 32,640 (La.App.2d Cir.10/27/99), 763 So.2d 628, writ denied, 00-0010 (La.6/16/00), 764 So.2d 963; comment (b) to La. C. Cr. P. art. 770.
Further, the prosecutor's question did not directly refer to any other crime allegedly committed by Defendant. The comment regarding intimidation was made by the witness, not by the prosecutor. Further, the question was not inevitably calculated to lead to the witness' response; the witness said "they kept intimidating" him, but could have simply said that he was afraid of the potential for retaliation.
Since the comment was made by the witness, not the prosecutor, La. C. Cr. P. art. 771 applies; that rule provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or

*264 (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Since the bench conference was unrecorded, there is no evidence that any party asked for an admonishment or a mistrial; and, as noted, there is no formal objection on the record, only a request for a bench conference that was not made by Smith's attorney. In the absence of an objection or even an on-the-record request for an admonition, this assignment of error is not properly preserved for review and is without merit.

Quincy Hill
Pro-se Assignment of Error 3. Trial court erred when allowing evidence (tape) to be used in / at trial and not induced into record as evidence, nor was it disclosed to defendant or defendant(s) attorney.
Pro-se Assignment of Error 4. Trial court under authority of sole discretion erred in not ruling / declaring mistrial due to perjury and tainted testimony and useage (sic) of (tape) recording.
In two pro-se assignments of error, Hill complains that his conviction cannot stand because the State did not produce the tape of Marcus George's statement to his attorney.
La. C. Cr. P. Art. 716 provides:
A. Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, including recorded testimony before a grand jury, or copy thereof, of the defendant in the possession, custody, control, or knowledge of the district attorney.
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
C. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer.
La. C. Cr. P. art. 718 provides:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of *265 Paragraph (1) hereof by in camera inspection.
La. C. Cr. P. art. 723 provides:
Except as provided in Articles 716, 718, 721, and 722, this Chapter does not authorize the discovery or inspection of reports, memoranda or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of statements made by witnesses or prospective witnesses, other than the defendant, to the district attorney, or to agents of the state.
The taped interviews with George were not used as evidence at trial; so, under these facts, they were not discoverable unless they contained exculpatory evidence.
In State v. Tate, 38,576 (La.App.2d Cir.8/18/04), 880 So.2d 255, writ denied, 04-2554 (La.1/14/05), 889 So.2d 268, this court explained the need for the production of exculpatory evidence during discovery:
The purpose of pretrial discovery procedures is to eliminate unwarranted prejudice to a defendant that could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042, 1044 (La.1982). Discovery procedures enable a defendant to properly assess the strength of the state's case against him in order to prepare his defense. State v. Roy, 496 So.2d 583 (La.App. 1st Cir.1986), writ denied, 501 So.2d 228 (La.1987). If a defendant is lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error. State v. Ray, 423 So.2d 1116, 1118 (La.1982).
Under the United States Supreme Court decision in Brady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)], the state, upon request, must produce evidence that is favorable to the accused where it is material to guilt or punishment. This rule has been expanded to include evidence that impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial judge for an in camera inspection. See U.S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Cobb, 419 So.2d 1237 (La.1982).
The test for determining materiality was firmly established in U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and has been applied by the Louisiana Supreme Court. See State v. Rosiere, 488 So.2d 965 (La.1986). The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383.
Two tapes of interviews between Detective Cromer and witness Marcus George were introduced into evidence at the hearing on the motion for new trial. The first interview was done on September 4, 2003. Among other things, George said that he arrived almost simultaneously with the robbers, that he knew all of the robbers from growing up in the neighborhood and that Hill had the AK-47 during the robbery. *266 His story differed from the victim's primarily in that he said the robbers all had their guns out when he (George) arrived on the scene. There is nothing exculpatory in his statement for any of the Defendants. The second interview was done on September 5, 2003, where the detective showed George the photo lineups, including Defendants. George identified all three Defendants in the three lineups; again, there was nothing exculpatory for any Defendant in this interview. Accordingly, there was no Brady violation and no violation of proper discovery procedures, so these assignments of error are without merit.

Chavis Grant
Assignment of Error 1. A forty-nine and one-half year sentence for armed robbery with a firearm, plus a five year consecutive sentence, pursuant to the statute, is excessive for this offender in this case.
Grant received the mandatory minimum sentence of 49½ years as a habitual offender, second, for armed robbery, and additionally was sentenced to serve an additional 5 years for the use of a firearm in the crime. He verbally objected to the sentence at the sentencing hearing, but did not file a motion to reconsider sentence or any pleading to invoke the rule of State v. Dorthey, 623 So.2d 1276 (La.1993). He now complains that his sentence is constitutionally excessive. See La. C. Cr. P. art. 881.1. He also complains that the trial court erred by imposing his entire sentence without the benefit of parole. La. R.S. 15:529.1(G).
Since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714. The burden is on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so, the defendant must "clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." Johnson, supra, at 676; State v. Wade, 36,295 (La.App.2d Cir.10/23/02), 832 So.2d 977, writ denied, 02-2875 (La.4/4/03), 840 So.2d 1213.
At sentencing, the court observed that Grant's prior felony conviction was for possession of cocaine and that Grant had numerous misdemeanor convictions. The judge also noted that Grant had "a sporadic work history" even though he was 29 years old. The judge further stated that Grant was the offender who actually took the money from the victim. As in State v. Mason, 39,936 (La.App.2d Cir.8/17/05), 908 So.2d 1250, nothing in Grant's history indicates that he is the exceptional defendant for whom the imposition of the mandatory is constitutionally excessive. Further, because the underlying offense here was armed robbery and, since the punishment for that crime includes a prohibition against parole, the trial court did not err in imposing the habitual offender sentence without the benefit of parole. State v. Carroll, 41,001 (La.App.2d Cir.4/12/06), 926 So.2d 827. The minimum sentence imposed upon Grant should be affirmed.
As error patent, however, this court's decision in State v. White, 39,634 (La. App.2d Cir.6/16/05), 907 So.2d 180, writ denied, 05-2097 (La.3/10/96), 925 So.2d *267 510,[1] requires the court to delete the additional 5-year sentence enhancement imposed by the trial court under the authority of La. R.S. 14:64.3. In White, this court stated, "[t]he applicable sentence under the habitual offender law effectively replaces the sentence for the underlying crime under La. R.S. 14:64 and 14:64.3." Thus, the additional 5-year term is deleted from Grant's sentence.

Jonathan Lee Smith
Assignment of Error 7. The Trial Court committed error when it imposed an excessive sentence, which sentence constitutes cruel and unusual punishment in violation of the Constitutions of the United States of America and the State of Louisiana.
The court sentenced Smith to serve a 55-year sentence as a habitual offender, second, and an additional 5-year term for the firearms enhancement. Like the similar term in Grant's sentence, the firearms enhancement term is hereby deleted from Smith's sentence.
As to the 55-year term, the test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La. App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are a defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
Second, a sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, supra; State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra. A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158.
In sentencing Smith, the trial court observed that Smith was actually a third-felony offender, not a second-felony offender, because he had prior convictions for possession of cocaine in 1998 and for attempted distribution of cocaine in 2002. The trial court also noted that Smith quit school in the 11th grade, had worked at "some fast food restaurants, lawn care" and claims to have obtained a GED in 1997. The trial court further noted that Smith had admitted to using marijuana *268 since the age of 18 and had admitted to his probation officer that he sold cocaine. Smith is unmarried and had two children, ages 4 and 1 at the time of sentencing. The judge also stated, among other things, that Smith had a weapon and marijuana in his car when he was arrested for this offense. Primarily because of Defendant's history of criminal activity, which included a felony drug conviction that was not included in the habitual offender bill, this is an adequate factual basis for the imposition of the 55-year sentence, only slightly higher than the minimum allowed by law. Apart from the error patent modification deleting the consecutive 5-year sentence mentioned above, this assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the convictions of Defendants Jonathon Lee Smith, Chavis C. Grant and Quincy Hill are affirmed. The sentence of Quincy Hill is affirmed. The sentences of Jonathon Lee Smith and Chavis C. Grant are amended to delete the consecutive 5-year sentence for the use of a firearm and, as amended, are affirmed.
CONVICTIONS AFFIRMED; SENTENCE OF QUINCY HILL AFFIRMED; SENTENCES OF JONATHON LEE SMITH AND CHAVIS C. GRANT AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The first circuit has recently disagreed with White in State v. Bonit, 05-0795 (La.App. 1st Cir.2/10/06), 928 So.2d 633.