STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 07-1419


STATE OF LOUISIANA

VERSUS

EZEKIEL MAURICE MCGINNIS


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 282536
HONORABLE DONALD THADDEUS JOHNSON, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Marc T. Amy, Billy Howard Ezell, and J. David Painter, Judges.

Amy, J., concurs in part and assigns reasons.

**CONVICTIONS AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.**


**Glenn G. Cortello**
**711 Washington Street**
**Alexandria, LA 71301**
**(318) 445-0022**
**Counsel for Defendant/Appellant:**
**Ezekiel Maurice McGinnis**

**James C. Downs**
**District Attorney - Ninth Judicial District Court**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Loren Marc Lampert**
**P.O. Drawer 1472**
**Alexandria, LA 71309**
**(318) 473-6650**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**EZELL, JUDGE.**

The Defendant, Ezekiel Maurice McGinnis, was charged by bill of indictment filed on April 27, 2006, with armed robbery with a firearm, in violation of La.R.S. 14:64 and 14:64.3; possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1; possession with intent to distribute CDS Schedule II, cocaine, in violation of La.R.S. 40:967(A)(1); and aggravated flight from an officer, in violation of La.R.S. 14:108.1(C). The Defendant was arraigned on May 12, 2006, and entered a plea of not guilty.

A bench trial commenced on August 16, 2006, and the trial court subsequently found the Defendant guilty as charged. A bill of information charging the Defendant as an habitual offender for the offense of armed robbery with a firearm was filed on August 24, 2006. On August 28, 2006, the Defendant was sentenced as follows: 1) armed robbery - fifty years at hard labor, without benefit of probation, parole, or suspension of sentence; 2) felon in possession of a firearm - ten years without benefit or probation, parole, or suspension of sentence; 3) aggravated flight from an officer - two years; and 4) possession with intent to distribute CDS Schedule II, cocaine - ten years, with two years to be served without benefits. All sentences were ordered to run concurrently. On the same date, the Defendant entered a plea of not guilty to the habitual offender bill. On November 27, 2006, the trial court adjudicated the Defendant a second felony offender on the charge of armed robbery with a firearm and sentenced him to serve fifty years at hard labor.

A motion for appeal and designation of record was filed on September 10, 2007. The Defendant is now before this court asserting the following twelve assignments of error:

> 1) The trial court erred in denying the Defendant's request for a continuance, thereby denying his constitutional guarantee of due process

1

of law, in violation of U.S. Const. art. V, applicable to the States through U.S. Const. amend. XIV, and La.Const. art. 1, § 2.

2) The Defendant was denied his constitutional guarantee to due process of law where Alexandria City Police failed to provide exculpatory evidence to the State in violation of *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

3) The trial court erred in finding the Defendant guilty of armed robbery, possession of a firearm by a convicted felon, aggravated flight from an officer, and possession with intent to distribute CDS Schedule II, cocaine.

4) The trial court erred in finding the Defendant to be a habitual offender.

5) The trial court erred by allowing Detective Cedric Green to testify to hearsay evidence concerning a revolver which was recovered at the crime scene.

6) The trial court erred by allowing testimony as to the alleged money having bullet tears/holes.

7) The trial court erred in admitting into evidence State's Exhibit 8, a gun; State's Exhibit 9, a flannel jacket; and State's Exhibit 10, a bullet proof vest, where the police officer did not recover said items from the Defendant or his vehicle and chain of custody was not established.

8) The trial court erred in admitting State's Exhibit 18, a revolver, where the police officer did not recover said item from the Defendant or his vehicle and chain of custody was not established.

9) The trial court erred in admitting State's Exhibit 22, two bags of cocaine, where the officer did not remove the cocaine from the Defendant's person or vehicle and chain of custody was not established.

10) The trial court erred in admitting State's Exhibit 25, one tan magazine bag with four metal magazines; State's Exhibit 26, seven boxes of .223 bullets; State's Exhibit 27, two Glock 9mm magazines; and State's Exhibit 28, one .223 casing.

11) The trial court erred in admitting State's Exhibit 32, alleged pieces of a gun.

12) The trial court erred in allowing Detective Constatino to testify to hearsay concerning an ATF gun trace.

**FACTS**

The Defendant was convicted of armed robbery with a firearm for taking a bundle of money from employees of Intertrust Armored Services. He was also convicted of being a felon in possession of a firearm, aggravated flight from an officer, and possession with intent to distribute CDS Schedule II, cocaine.

Gary Frost testified that he was employed by Intertrust Armored Services, a company that picks up and delivers money, on December 6, 2005. That day, he and his partner, Cedric McGinnis,[1] were assigned to pick up "Fed money" from Hibernia Bank in Alexandria.[2] Mr. Frost and Cedric arrived at the bank at 7:45 a.m. The two picked up money and began loading it into the armored truck. Mr. Frost testified that one or two bags had been loaded into the truck when he heard, "'It's a robbery,' or 'I - - I want your money.'" Mr. Frost testified that he turned around and saw a man wearing a mask pointing a gun at him. The man then demanded their guns. Mr. Frost testified that he was not wearing his gun that day, but the man took Cedric's gun and cell phone and threw them into the parking lot.[3] The man then grabbed a bag of money and ran.[4] Mr. Frost never identified the man.

On cross-examination, Mr. Frost testified that it was company policy that he carry his gun. However, he did not have his gun on that day. He further testified that he told police he had his gun because he was afraid of losing his job. Mr. Frost admitted that he lied to police. He further testified that he "went back" and told the truth.

---

[1]Cedric McGinnis is the Defendant's cousin.

[2]This is a large sum of money that is taken to Lafayette and then to the Federal Reserve in New Orleans.

[3]Mr. Frost's cell phone was inside the truck.

[4]The bag contained $220,000.

Deputy Percy Dauzat, a purchasing agent for the Rapides Parish Sheriff's Department, testified that he was in downtown Alexandria on December 6, 2005. At 8:30 a.m., he saw a man running out of the parking lot of Hibernia Bank carrying a large bundle. The man wore a mask and had a gun in his left hand. Deputy Dauzat followed the man, who was running down the street. The man went to the "Mini-Park," got into a champagne-colored Grand Marquis, and drove out of the parking lot. The car stopped at a red light, but the man saw a K-9 unit driving toward him and proceeded to drive through the light. Deputy Dauzat stopped to give the driver of the K-9 unit the license plate number and description of the car. The K-9 unit began to pursue the car. Deputy Dauzat could not identify the man he saw leaving the bank.

Corporal Debra Blackwood testified that she heard a radio transmission regarding the armed robbery and a description of the car the suspect had left the area in. As a result of hearing that transmission, Corporal Blackwood parked on the Pineville side of the O.K. Allen Bridge in hope that the car would pass through that area. Corporal Blackwood testified that after being parked for approximately one minute, she saw a champagne-colored Mercury Marquis with a Texas license plate cross the bridge. She recognized the license plate number as that being given by police dispatch, so she followed the vehicle. Corporal Blackwood testified that the man must have realized a police car was behind him because he took to the shoulder of the roadway and began passing vehicles. The man continued to drive erratically. During the lengthy pursuit, Corporal Blackwood noticed the man reaching under the seat and "fondling" with something. Corporal Blackwood then saw a puff of smoke inside the car. Corporal Blackwood subsequently saw "him come across the seat with a rifle." The Defendant proceeded to the Baghdad Community, where Grant Parish Sheriff's Deputies had laid out spike strips. When the man saw the spike strips, he

4

tried to avoid them and crashed his car. During the chase, Corporal Blackwood reported driving at speeds of 100 to 118 miles per hour.[5] She could not identify the driver of the car.

Trooper Ken Malone testified that he joined in the pursuit of the Defendant just inside Rapides Parish. After the car crashed, Trooper Malone approached the car. Trooper Malone testified that he removed a jacket, a bulletproof vest, and an AK-47 from the vehicle and placed them on the asphalt next to him. Trooper Malone also saw wrapped bundles of cash on the passenger floorboard.

Detective Stephen Constantino testified that he was responsible for processing the scene where the car crashed. He testified that he secured crack cocaine, an AK-47, a .357 handgun, a bag containing four magazines which held .223 ammunition, seven boxes of .223 bullets, a .45 caliber magazine, eight .45 caliber bullets, and a weight scale from the roof of the Defendant's car. He also seized money, two spent .223 casings, and one projectile from the passenger floorboard of the car.[6] A bulletproof vest was recovered from the roof of the car or from the ground. A Halloween mask was found on the left side of the car on the road. Additionally, a flannel type jacket was found on the right side of the car on the road. Detective Constantino located two brown leather gloves in the backseat. He also recovered two Glock 9mm magazines.

Detective Constantino testified that the money found inside the car was damaged by the projectile found on the passenger floorboard. He further testified that there was a bullet hole in the passenger door of the car.

---

[5]This was corroborated by Trooper Malone.

[6]Detective Constantino testified that "the spent casing is what the bullet was in, and the projectile is with the actual lead bullet coming out."

5

Detective Constantino agreed that a "good number" of officers were at the scene of the crash. Once he got to the scene, he tried to "get everybody out" and secure the scene. Detective Constantino testified that he arrived approximately ten minutes after the crash. All evidence that was on the roof of the car was there when he arrived, and he had no idea who removed those items from the car.

Detective Cedric Green went to Hibernia Bank on December 6, 2005. He took taped statements from Mr. Frost and Mr. McGinnis and interviewed several witnesses. Detective Green testified that Mr. Frost said the man took his gun, but later admitted that he was not wearing his gun. Detective Green testified that Mr. Frost and Mr. McGinnis were suspects, but he began to focus on Mr. McGinnis. Mr. McGinnis informed Detective Green that the man had taken his cell phone, but Detective Green noticed Mr. McGinnis had a cell phone on his person at that time. Mr. McGinnis then informed Detective Green that he had two cell phones. As a result, Detective Green obtained Mr. McGinnis's cell phone records and discovered that Mr. McGinnis had used the cell phone he had on his person to call the Defendant two minutes before the robbery.

Detective Green participated in interviewing the Defendant. During that interview, the Defendant admitted that he took money from the bank. He said the gun he used during the robbery was a water pistol, but he had a "223" or "SK" in the car. He threw the water pistol out of the car during the police chase. He said he took his cousin Mr. McGinnis's gun and cell phone and threw them in the parking lot. The Defendant informed Detective Green that Mr. McGinnis did not know he was going to take the money. The Defendant denied that Mr. McGinnis called him that morning, but said the two talked on a daily basis. The Defendant further stated he did not know who the revolver found in his car belonged to and did not know that it was in the car.

6

He stated a person he gave a ride to may have left it in there. He additionally admitted the "paddies" found in his car were his. The Defendant also told Detective Green that he bought the bulletproof vest from someone on the street.

Detective Green testified that police never determined whether Mr. McGinnis was involved in the robbery. However, the bulletproof vest that was recovered by police belonged to Mr. McGinnis. Detective Green testified that the Defendant was never asked if Mr. Frost was involved in the robbery.

Detective Green testified that State's Exhibit 18, a revolver, was recovered from the Defendant's car. However, he understood that a semi-automatic handgun was used during the robbery. Detective Green testified that State's Exhibit 19 was an automatic pistol that was found by a citizen on the O.K. Allen Bridge, the same bridge the Defendant traveled over during his "getaway," and turned over to police.[7] Detective Green ran an "ATF Firearms Trace" and found that the pistol was purchased by Mr. McGinnis.[8] Detective Green testified that to his knowledge no fingerprints were found on the pistol.

Alex King, an employee of the North Louisiana Crime Lab who was accepted as an expert in the field of forensic chemistry, testified that State Exhibit 22 was tested and determined to contain cocaine, which is a Schedule II narcotic. Additionally, the cocaine weighed 30.7 grams.

---

[7]Sergeant Bates testified that he recovered the gun found on O.K. Allen Bridge on December 6, 2005. No fingerprints were recovered from that gun and there was no physical evidence linking the Defendant to that gun. Additionally, Bates could not determine how long the gun had been on the bridge. Detective Constantino also recovered two pieces of a gun from the O.K. Allen Bridge on December 7, 2005, which appeared to be missing pieces of the gun recovered the previous day.

[8]Detective Constantino testified that he ran the trace.

Sergeant William Neal Bates was accepted as an expert in fingerprint comparison. Sergeant Bates testified that the Defendant's fingerprints were the same as those on the bill of information filed in docket number 256852. State's Exhibit 23 indicates the Defendant pled guilty to possession with intent to distribute CDS Schedule II, cocaine, under that docket number on February 12, 2001.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. There is an error regarding the habitual offender proceeding. The trial court did not specify what portion, if any, of the Defendant's habitual offender fifty-year hard labor sentence, imposed for the conviction of armed robbery with use of a firearm, included the enhanced penalty of La.R.S. 14:64.3. At the habitual offender proceeding, the trial court sentenced the Defendant in pertinent part: "And I do find you guilty of being a second felony offender, and I sentence you to fifty years at hard labor."

At the time the Defendant committed the offense of armed robbery with use of a firearm, La.R.S. 14:64.3(A) provided:

> When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.

In *State v. King*, 06-1903 (La. 10/16/07), 969 So.2d 1228, the supreme court held that a defendant convicted of armed robbery and sentenced under the habitual offender law can be sentenced to an additional five years under La.R.S. 14:64.3, when the dangerous weapon used is a firearm.

In *State v. White*, 42,725 (La.App. 2 Cir. 10/24/07), 968 So.2d 901, the defendant was convicted of two counts of armed robbery with a firearm, and

8

sentenced to thirty years at hard labor without benefit of parole, probation, or suspension of sentence on each count to run concurrently. On error patent review, the court noted that the trial court did not specify what portion, if any, of the defendant's thirty-five year hard labor sentence without benefits was imposed under La.R.S. 14:64.3. The court found that the absence of a specification that the defendant's sentences included a term under La.R.S. 14:64.3, rendered the defendant's sentence indeterminate. Therefore, the court vacated the sentences and remanded for resentencing according to law for clarification of whether the defendant's sentences included any additional punishment under La.R.S. 14:64.3.

This court finds that the absence of a specification that the Defendant's habitual offender sentence included an enhanced term of imprisonment under La.R.S. 14:64.3 renders this sentence indeterminate. Therefore, this court hereby vacates the habitual offender sentence and remands for resentencing in accordance with La.R.S. 15:529.1 and 14:64.3. The trial court should clearly set forth the portion of the sentence enhanced under La. R.S. 14:64.3. Additionally, the court instructs the trial court that the portion of the sentence enhanced under La.R.S. 14:64.3 is not to be served at hard labor. *See State v. Wardsworth,* 04-1572 (La.App. 3 Cir. 5/25/05), 904 So.2d 65.

**ASSIGNMENT OF ERROR NUMBER THREE**

When multiple issues are raised on appeal and sufficiency of the evidence is one of the alleged errors, the reviewing court should first determine whether the evidence is sufficient, as a ruling that the evidence was insufficient would necessitate an acquittal. *State v. Hearold*, 603 So.2d 731 (La.1992). We will, therefore, address the Defendant's third assignment of error. Therein, the Defendant contends the trial court erred in finding him guilty of armed robbery, possession of a firearm by a

9

convicted felon, aggravated flight from an officer, and possession with intent to distribute CDS Schedule II, cocaine.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983). It is the role of the factfinder to weigh the respective credibility of witnesses, and the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluation under the *Jackson* standard. *State ex rel. Graffagnino*, 436 So.2d 559. Additionally, when the conviction is based on direct evidence and circumstantial evidence, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a reasonable juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Jacobs*, 504 So.2d 817 (La.1987).

> . . . .

> The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. However, while an evaluation of other reasonable hypotheses of innocence provides a helpful methodology for determining the existence of reasonable doubt, the reviewing court does not simply determine whether there is another hypothesis which could explain the events in an exculpatory fashion. Rather, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether any alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof beyond a reasonable doubt. *State v. Captville*, 448 So.2d 676 (La.1984); *State v. Jones*, 96-1581 (La.App. 3 Cir. 6/4/97); 696 So.2d 240.

*State v. Joseph*, 98-48, pp. 2-4 (La.App. 3 Cir. 7/1/98), 716 So.2d 927, 928-29.

ARMED ROBBERY WITH A FIREARM

The Defendant was convicted of armed robbery with a firearm. The Defendant argues that there was substantial evidence that he committed theft, but not armed robbery. The Defendant further asserts the State did not prove he did not give a ride to someone and drop said person off between the mini-park in downtown Alexandria

and the O.K. Allen Bridge. The Defendant asserts he was not identified by Mr. Frost, Mr. McGinnis, Corporal Blackwood, Trooper Malone, or Deputy Dauzat.

> To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; *State v. Jeselink*, 35,189 (La.App. 2d Cir.11/2/01), 799 So.2d 684. A dangerous weapon is any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3). This court has viewed the crime of armed robbery with the use of a firearm under La. R.S. 14:64.3 as a more serious form of armed robbery for which the penalty range is effectively 15 to 104 years. *State v. Smith*, 40,894 (La.App. 2d Cir.7/26/06), 936 So.2d 255, *writ denied*, 2006-2113 (La.3/30/07), 953 So.2d 60; *State v. White*, 39,634 (La.App. 2d Cir.6/16/05), 907 So.2d 180. This court has also held that the crime of armed robbery with the use of a firearm must be charged by bill of information and proven to the jury. *State v. Odell*, 37,194 (La.App. 2d Cir.6/5/03), 850 So.2d 749. See *State v. Jefferson*, 40439 (La.App. 2d Cir.1/27/06), 920 So.2d 984 and *State v. Adkins*, 39,724 (La.App. 2d Cir.6/29/05), 907 So.2d 232, footnote 1.

*State v. Ellis*, 42,520, pp. 4-5 (La.App. 2 Cir. 9/26/07), 966 So.2d 139, 144. *See also State v. Daniels*, 03-1621 (La.App. 3 Cir. 5/12/04), 873 So.2d 822, *writ denied*, 04-1802 (La. 11/24/04), 888 So.2d 227.

The Defendant asserts that he committed a theft and not a robbery. He asserts the defense's theory of the case that a theft was arranged by Mr. Frost, Mr. McGinnis, and himself. The Defendant notes that Mr. Frost initially lied to police about whether he possessed his gun at the time of the robbery. Additionally, Mr. Frost did not have his cell phone in his possession. He points out that Detective Green testified that Mr. Frost was a suspect in the robbery. The Defendant additionally notes Detective Green's testimony that Mr. McGinnis said his cell phone was taken, but had a cell phone in his possession at the time Detective Green spoke to him. Detective Green also testified that Mr. McGinnis called the Defendant two minutes prior to the robbery.

11

Mr. Frost testified that a man wearing a mask pointed a semi-automatic pistol at him and Mr. McGinnis and took money that was in their possession. Police found a bag containing $220,000, a mask, a bulletproof vest, several weapons, and ammunition in the Defendant's car. The Defendant admitted, in his statement to police, that he took the money, and said he was armed with a water pistol and that Mr. McGinnis was not involved in the robbery. When questioned, Mr. Frost denied any involvement in the robbery.

The Defendant was charged by bill of information with armed robbery with a firearm, and, during opening statements, the State informed the trial court that the Defendant was charged with armed robbery with a firearm. Further, when finding the Defendant guilty, the trial court stated, "as to the charge of Armed Robbery, the Court finds the defendant guilty as charged." Thus, it is clear the trial court believed the Defendant committed the robbery and Mr. Frost's testimony that the Defendant possessed a gun and not merely a water pistol at the time of the robbery. The trial court's credibility determination should not be second guessed by this court. *State v. Marshall*, 04-3139 (La. 11/29/06), 943 So.2d 362, *cert. denied*, __ U.S. __, 128 S.Ct. 239 (2007).

Under all of these circumstances, we cannot say that the trial court's rejection of the hypothesis of innocence offered at trial was unreasonable and that no rational trier of fact could find that the Defendant committed armed robbery while armed with a firearm. The Defendant did not argue before the trial court that the State failed to prove that he did not give a ride to someone and drop said person off between the mini-park in downtown Alexandria and the O.K. Allen Bridge. However, that assertion is unreasonable as well. The evidence, when viewed in the light most favorable to the State, supports the Defendant's conviction for armed robbery with

12

a firearm. For theses reasons, the Defendant's conviction for armed robbery with a firearm should is affirmed.

## POSSESSION OF A FIREARM BY A CONVICTED FELON

The Defendant was convicted of being a felon in possession of a firearm. He makes no argument regarding this offense in his brief to this court; thus, this issue is considered abandoned. Uniform Rules—Courts of Appeal, Rule 2-12.4.

## AGGRAVATED FLIGHT FROM AN OFFICER

The Defendant was convicted of aggravated flight from an officer. He makes no argument regarding this offense in his brief to this court; thus, this issue is considered abandoned. Uniform Rules—Courts of Appeal, Rule 2-12.4.

## POSSESSION WITH INTENT TO DISTRIBUTE CDS SCHEDULE II, COCAINE

The Defendant was convicted of possession with intent to distribute CDS Schedule II, cocaine. The State was required to prove beyond a reasonable doubt that the Defendant intentionally possessed cocaine and that he had the specific intent to distribute the cocaine. La.R.S. 40:967(A)(1). The State was also required to prove guilty knowledge, "*i.e.*, . . . that an accused is aware of the illegal drugs in his possession." *State v. Davis*, 05-543, p. 8 (La.App. 3 Cir. 12/30/05), 918 So.2d 1186, 1192, *writ denied*, 06-587 (La.10/13/06), 939 So.2d 372. "However, since knowledge is a state of mind, it need not be proven as fact, but rather may be inferred from the circumstances." *State v. Major*, 03-3522, p. 8 (La. 12/1/04), 888 So.2d 798, 803 (citation omitted).

The Defendant asserts the State offered no evidence that he had dominion and control over the cocaine, that he knowingly and intentionally possessed it, or that he had the intent to distribute the cocaine.

13

During a taped interview, the Defendant stated the "street said I'm selling dope." He admitted the "paddies" found in his car belonged to him. Detective Green then stated, "the street wasn't wrong then" and the Defendant responded, "sometime they right, sometime they wrong." Detective Green subsequently said, "this time they had it" and the Defendant replied, "this time they had it."

Detective Green testified that when he used the term "paddies," during his interview of the Defendant, he was referring to the cocaine found in the Defendant's car. It appeared to Detective Green that the Defendant understood the term.

The Defendant herein admitted that the 30.7 grams of cocaine in his car belonged to him and that he sold drugs. Additionally, police found a weight scale in the Defendant's car. Furthermore, the Defendant had a prior conviction for possession with intent to distribute CDS Schedule II, cocaine. There was no testimony in the case at bar that the amount of cocaine found by police was not consistent with personal use, but the trial court was able to view the cocaine, as it was admitted as an exhibit at trial. The evidence, when viewed in the light most favorable to the State, supports the Defendant's conviction for possession with intent to distribute CDS Schedule II, cocaine. For these reasons, the Defendant's conviction for possession with intent to distribute CDS Schedule II, cocaine, is affirmed.

### ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the Defendant contends the trial court erred in denying his request for a continuance, thereby denying his constitutional guarantee of due process of law, in violation of U.S. Const. art. V, applicable to the States through U.S. Const. amend. XIV, and La.Const. art. 1, § 2.

The Defendant asserts defense counsel made an oral motion for a continuance on the day trial began because counsel was not prepared for trial, and the trial court

14

denied the motion. The court minutes and the trial transcript do not reflect that defense counsel sought a continuance. The State does not assert that defense counsel did not make an oral motion for continuance, but asserts the Defendant failed to file a written motion seven days prior to trial as required by La.Code Crim.P. art. 707.

As there is no evidence in the record of the motion for continuance or the basis for said motion, this issue is not properly before this court for consideration. Uniform Rules—Courts of Appeal, Rule 1-3.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the Defendant contends he was denied his constitutional guarantee to due process of law where Alexandria City Police failed to provide exculpatory evidence to the State in violation of *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

The Defendant contends he was not given a copy of the second statement made by Mr. Frost. In that statement, Mr. Frost admitted he lied to police in his first statement when he said he had his weapon on him during the robbery and was disarmed by the Defendant. During Mr. Frost's testimony, defense counsel stated he had not been supplied with a copy of Mr. Frost's second statement. At that time, the State informed the trial court that it did not have the statement. Mr. Frost then stated he did not remember if the statement was recorded. Mr. Frost later testified that both his statements were recorded. Defense counsel again asked that he be provided with a copy of Mr. Frost's second statement to police. Detective Green testified that he thought Mr. Frost's second statement was transcribed. Detective Green then went through his file and did not find the statement at issue. Detective Green later testified that he was not sure that Mr. Frost's second statement was recorded.

15

The Defendant argues that having the statement would have assisted defense counsel in cross-examining Mr. Frost and developing the theory of the case. The Defendant further argues that had he known of the exculpatory evidence at issue, he might have elected to proceed with a trial by jury.

> In *Brady*, the Supreme Court held that the suppression by the prosecution of evidence favorable to the accused violates a defendant's due process rights where the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. 373 U.S. at 87, 83 S.Ct. at 1196-1197. The *Brady* rule encompasses evidence which impeaches the testimony of a witness when the reliability or credibility of that witness may be determinative of guilt or innocence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972); *State v. Knapper*, 579 So.2d 956, 959 (La.1991). Still, *Brady* and its progeny do not establish a general rule of discoverability. A prosecutor does not breach his constitutional duty to disclose favorable evidence "unless the omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).

> For purposes of *Brady's* due process rule, a reviewing court determining materiality must ascertain not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (citing *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381); *Strickland*, 683 So.2d at 234 (citing *State v. Marshall*, 94-0461, p. 14 (La.9/5/95), 660 So.2d 819, 825). Thus, the reviewing court does not apply an outcome-determinative test; rather, a *Brady* violation occurs when the court finds that the "evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434, 115 S.Ct. at 1566 (quoting *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381).

*State v. Deruise*, 98-541, pp. 16-17 (La. 4/3/01), 802 So.2d 1224, 1237-38, *cert. denied*, 543 U.S. 926, 122 S.Ct. 283 (2001).

Defense counsel failed to object to testimony regarding Mr. Frost's second statement to police. Defense counsel merely stated that he had not been provided with a copy of the second statement and indicated that not having the statement would limit his ability to cross-examine Mr. Frost. The Defendant did not assert that he was

16

unaware that Mr. Frost lied to police in his initial statement. Thus, the Defendant has not met the threshold showing that the State suppressed any information.

The Defendant asserts that had he known of the exculpatory evidence, he may have elected to proceed with a trial by jury. This issue was not asserted in the trial court and is not be addressed by this court on appeal. Uniform Rules—Courts of Appeal, Rule 1-3.

## ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth assignment of error, the Defendant contends the trial court erred in finding him to be a habitual offender.

The Defendant made no argument regarding this assignment of error. Thus, this assignment of error is considered abandoned. Uniform Rules—Courts of Appeal, Rule 2-12.4.

## ASSIGNMENTS OF ERROR NUMBERS FIVE, SIX, SEVEN, EIGHT, NINE, TEN, ELEVEN AND TWELVE

In brief to this court, the Defendant collectively addressed assignments of error five through twelve. He asserts there was no chain of custody established or foundation for the admission in evidence of many of the State's exhibits. The Defendant then sets forth the law regarding chain of custody. The Defendant then alleges there were no eyewitnesses to identify him and that he was not identified by any police officer. Thus, his connection to the crime is purely circumstantial, "Save [his] confession, in that he was apprehended when his automobile crashed after an ensuing high speed chase." The Defendant then alleges that the reasonable hypothesis was not excluded that someone else committed the robbery or theft and left the money and weapons in his car. The Defendant further notes that Detective Constantino testified that there were as many as twenty police officers present and

moving in and out of the crime scene when he arrived at the location and that much of the evidence had already been placed on the roof of the Defendant's car at that time. The Defendant then asserts that the stolen money was not counted by police. He also points out that a weapon was recovered from the roof of the car, a Halloween mask from the roadway on the left side of the car, and a flannel coat from the roadway on the right side of the car. The Defendant then asserts that items too numerous to list were recovered by Detective Constantino from the roof of the car.

This court has explained:

La.C.E. art. 901(A) provides: The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

> The comments to paragraph A state that this article does not expressly require the proponent of real evidence to demonstrate that the so-called "chain of custody" is intact as part of his proof of authenticity. However, the comment further explains that the article is not intended to change the prior law requiring the proffering party to show that the proffered item is the original and did not change, if these considerations may have a bearing on the relevance of the evidence.
>
> Admissibility of evidence is a question of law for the judge. This court in *State v. Jones*, 587 So.2d 787 (La.App. 3rd Cir.), *writ denied*, 590 So.2d 78 (La.1991), stated:
>
>> Evidence is admissible at trial if properly identified. Physical evidence is admissible if the chain of custody is established from the time of seizure to the time it is offered in evidence. The law does not require that the evidence relating to chain of custody eliminate all possibilities regarding identification. *It suffices if the evidence establishes that it is more probable than not that the object offered in evidence is the one connected with the case.* A preponderance of the evidence is sufficient. A defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact. *State v. Sweeney*, 443 So.2d 522 (La.1983). *State v. Simon*, 544 So.2d 610 (La.App. 3rd Cir.1989), writ denied, 550 So.2d 647 (La.1989). (Emphasis ours)

18

*State v. Gamble*, 93-809, p. 18 (La.App. 3 Cir. 2/2/94), 631 So.2d 586, 596-97(emphasis in original).

Assignment of Error Number Five

In his fifth assignment of error, the Defendant contends the trial court erred by allowing Detective Green to testify to hearsay evidence concerning a revolver which was recovered at the crime scene. The Defendant cites to record page 111. On that page of the record, the State asked Detective Green if State Exhibit 18 was the revolver recovered from the Defendant's car. Defense counsel objected, stating, "Mr. Green had stated earlier that he was not present at the crime scene; so, he can't testify to whether that's the revolver that was recovered or not." The Defendant did not object based on hearsay. This issue was not asserted in the trial court and is not be addressed by this court on appeal. La.Code Crim.P. art. 841; Uniform Rules—Courts of Appeal, Rule 1-3.

Assignment of Error Number Six

In his sixth assignment of error, the Defendant contends the trial court erred by allowing testimony as to the alleged money having bullet tears/holes. At trial, defense counsel objected to testimony regarding the bullet path or trajectory through the bag of money found in the Defendant's car on the basis that it was not relevant to anything the Defendant was charged with. The Defendant did not object to this testimony of the basis of chain of custody or foundation. Thus, the Defendant may not now argue that the testimony was inadmissible based on chain custody or lack of foundation. Thus, this assignment of error is not be considered. La.Code Crim.P. art. 841; Uniform Rules—Courts of Appeal, Rule 1-3.

19

Assignments of Error Numbers Seven, Eight, Nine, And Ten

In assignments of error seven, eight, nine, and ten, the Defendant contends the trial court erred in admitting into evidence State's Exhibit 8, a gun; State's Exhibit 9, a flannel jacket; State's Exhibit 10, a bulletproof vest; State's Exhibit 18, a revolver; State's Exhibit 22, two bags of cocaine; State's Exhibit 25, one tan magazine bag with four metal magazines; State's Exhibit 26, seven boxes of .223 bullets; State's Exhibit 27, two Glock 9mm magazines; and State's Exhibit 28, one .223 casing, when the police officer did not recover said items from the Defendant or his vehicle and chain of custody was not established.

Trooper Malone testified that when he arrived at the scene he removed a jacket, a bulletproof vest, and an AK-47 from the vehicle and placed them on the asphalt next to him. Once at the scene, Detective Constantino, recovered State's Exhibit 8, an AK-47; State's Exhibit 18, a .357 handgun; State's Exhibit 22, two bags of crack cocaine; State's Exhibit 25, a bag containing four magazines; and State's Exhibit 26, seven boxes of .223 bullets from the roof of the Defendant's car. State's Exhibit 9, a flannel jacket, was found on the roadway on the right side of the car. Additionally, State's Exhibit 10, a bulletproof vest, was found on the roof of the car or on the ground. Detective Constantino did not testify where he found State's Exhibit 27, two Glock 9mm magazines. He further testified that State's Exhibit 28, a .223 casing, was found on the floorboard of the car. Detective Constantino did not know who removed the items from the car.

In *State v. Ashford*, 03-1691 (La.App. 4 Cir. 6/16/04), 878 So.2d 798, *writ denied*, 04-2015 (La. 1/7/05), 891 So.2d 667, the defendant argued the trial court erred in allowing the State to introduce a handgun seized from the scene because the officer who actually seized the items did not testify. Defense counsel objected on the

grounds that the chain of custody and foundation for introduction of the items were insufficient. The fourth circuit noted that the appellant pointed out that the police report reflected that Officer Felix personally seized the hat and gun; however, a copy of the report was not in the record. The court then stated the following:

> Nevertheless, Officer Mejia testified at trial that he personally did not seize these items, but he did identify them in court as the items that he saw on the scene. He also identified photographs of the scene that depict the hat and the gun. Officer Mejia further testified that he initially took "custody" of the hat and gun and turned them over to the officers who were investigating the incident as they were in charge of documenting the evidence. Thus, it does not appear that the trial court abused its discretion in determining that a sufficient basis for introduction of the evidence existed.

*Id*. at 806.

Detective Constantino did not remove the items at issue from the Defendant's car.[9] However, he collected them from the roof of the car and the area around the car. Based on the court's ruling in *Ashford*, the trial court did not err in finding a sufficient basis for the introduction of the evidence at issue at trial. Accordingly, Assignments of Error Number seven, eight, nine, and ten lack merit.

Assignment of Error Number Eleven

In his eleventh assignment of error, the Defendant contends the trial court erred in admitting State's Exhibit 32, alleged pieces of a gun. The Defendant cites record page 154. On that page of the record, the State explains that State's Exhibit 32 was two plastic pieces of a gun recovered from the O.K. Allen Bridge the day following the robbery. The Defendant objected to the admission of the exhibit on page 154, but failed to state a basis for the objection. The Defendant may not now argue that the exhibit is inadmissible based on chain custody or lack of foundation. La.Code

_____

[9]Detective Constantino testified that he removed State Exhibit 28 from the car. However, the State indicated the item was removed from the roof of the car.

21

Crim.P. art. 841. Thus, this assignment of error is not considered. Uniform Rules—Courts of Appeal, Rule 1-3.

Assignment of Error Number Twelve

In his twelfth assignment of error, the Defendant contends the trial court erred in allowing Detective Constatino to testify to hearsay concerning an ATF gun trace. Detective Constantino testified that he generated the document admitted into evidence as State's Exhibit 21, which showed that a .45 caliber found on the O.K. Allen Bridge was purchased by Mr. McGinnis McGinnis. The Defendant did not object to this testimony. Thus, the Defendant may not raise this issue for the first time on appeal. La.Code Crim.P. art. 841; Uniform Rules—Courts of Appeal, Rule 1-3.

**DECREE**

The Defendant's convictions are affirmed. The Defendant's habitual offender sentence imposed for the conviction of armed robbery with the use of a firearm is vacated and the case remanded to the trial court for resentencing in accordance with La.R.S. 15:529.1 and 14:64.3. The trial court should clearly set forth the portion of the sentence enhanced under La.R.S. 14:64.3. Additionally, the court instructs the trial court that the portion of the sentence enhanced under La.R.S. 14:64.3 is not to be served at hard labor.

**CONVICTIONS AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.**

NUMBER 07-1419

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS

EZEKIEL MAURICE MCGINNIS

AMY, J., concurring in part.

I join in the majority opinion. However, under the authority given to this court by La.Code Crim.P. art. 882(A) to correct an illegal sentence, I would also amend the sentences imposed for possession of a firearm by a convicted felon, aggravated flight from an officer, and possession with intent to distribute cocaine to reflect that each is to be served at hard labor as is required by law. *See* La.R.S. 14:95.1(B), La.R.S. 14:108.1(E), and La.R.S. 40:967(B)(1).